```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
ROSLYN LA LIBERTE,                        :
                                          :
                        Plaintiff,        :
                                          :          MEMORANDUM AND ORDER
            -against-                     :
                                          :          18-cv-5398 (DLI) (VMS)
JOY REID,                                 :
                                          :
                        Defendant.        :
                                          :
----------------------------------------------------------- x
```

**DORA L. IRIZARRY, Chief United States District Judge:**

On September 25, 2018, Plaintiff Roslyn La Liberte ("Plaintiff"), a citizen of California, commenced this action against New York citizen Defendant Joy Reid ("Defendant") for damages caused by Defendant's allegedly defamatory social media publications. *See*, Complaint ("Compl."), Docket ("Dkt.") Entry No. 1; Amended Complaint ("Am. Compl."), Dkt Entry No. 16. This Court has subject matter jurisdiction based on diversity pursuant to 28 U.S.C. § 1332 as Plaintiff seeks damages in excess of $75,000. On December 17, 2018, Defendant moved to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), and to strike under California's Anti-Strategic Litigation Against Public Participation ("anti-SLAPP") statute, California Code of Civil Procedure ("Cal. Civ. Pro. Code") § 425.16. *See*, Motion to Dismiss, Dkt. Entry No. 17. Plaintiff opposed, *See*, Memorandum in Opposition ("Mem. in Opp."), Dkt. Entry No. 29, and Defendant replied, *See*, Defendant's Reply ("Reply"), Dkt. Entry No. 32. For the reasons set forth below, Defendant's motion is granted in its entirety and the action is dismissed.

**I.     Background**

The following allegations of fact are taken from the Amended Complaint, which are presumed true for purposes of this decision.

On June 25, 2018, Plaintiff attended a city council meeting in Simi Valley, California (the "Council Meeting"), to "provide her opinion" on California Senate Bill 54 ("SB 54"). Am. Compl. ¶ 35. SB 54 limits the cooperation between state and local law enforcement and federal immigration authorities. Hundreds of people attended the Council Meeting, which lasted for about five hours. *Id.* ¶ 36. During a break in the proceedings, a fourteen-year-old boy approached Plaintiff to discuss her stance on the legislation. *Id.* ¶ 39. During the conversation, Plaintiff was photographed (the "Photograph") interacting with the boy as follows:



*Id.* ¶ 40.

Three days later, an activist named Alan Vargas tweeted the Photograph with this description:

> You are going to be the first deported . . . dirty Mexican[,] . . . [w]ere some of the things they yelled they yelled [sic] at this 14-year-old boy. He was defending immigrants at a rally and was shouted down. Spread this far and wide this woman needs to be put on blast.

*Id.* ¶ 41. On June 29, 2018, Defendant broadcasted Vargas' tweet. *Id.* ¶ 43. According to Plaintiff, before Defendant's broadcast, the Vargas tweet "had not received much attention." *Id.* The Vargas tweet went "viral" after Defendant's broadcast. *Id.*

That same day, Defendant also posted the Photograph to her Instagram account (the "June 29th Post") with this caption:

> He showed up to rally to defend immigrants . . . She showed up too, in her MAGA hat, and screamed, "You are going to be the first deported" . . . "dirty Mexican!"

2

> He is 14 years old. She is an adult. Make the picture black and white and it could be the 1950s and the desegregation of a school. Hate is real, y'all. It hasn't even really gone away.

*Id.* ¶ 48. Also on June 29, 2018, Fox 11, a local television station in Los Angeles, interviewed the boy who stated that Plaintiff "was [ . . . ] trying to keep [the interaction] civil." *Id.* ¶ 52. On June 30, 2018, Plaintiff's son emailed Defendant a link to the interview and advised Defendant that her characterization of the incident was inaccurate. *Id.* ¶ 53.

On July 1, 2018, Plaintiff's son again emailed Defendant stating that Defendant had depicted Plaintiff's interaction with the boy inaccurately. *Id.* ¶ 54. That same day, Defendant posted on Instagram and Facebook (the "July 1st Posts"), the Photograph, alongside a photograph of protesters in Little Rock, Arkansas in 1957 with this caption:

> It was inevitable that this image would be made. It's also easy to look at old black and white photos and think: I can't believe that person screaming at a child, with their face twisted in rage, is real. B[ut] everyone one of them were. History sometimes repeats. And it is full of rage. Hat tip to @joseiswriting. #regram #history #chooselove.

*Id.* ¶ 56.

On July 2, 2018, at 4:15 p.m., Plaintiff's counsel emailed Defendant demanding that Defendant delete her social media posts and apologize to Plaintiff by 6:00 p.m. that night. *Id.* ¶ 56. That evening, at 7:25 p.m., Defendant removed the posts and issued the following statement through her social media platforms: "It appears I got this wrong. My apologies to Mrs. La Liberte and Joseph." *Id.* ¶ 58. Despite the apology, Plaintiff received many hate messages by telephone, text, email, and mail. *Id.* ¶ 60. Plaintiff now sues for defamation based on the hate messages she received.

3

## II. Legal Standards

### 1. Choice of Law and the Applicability of California's Anti-SLAPP Statute in Federal Court

As a threshold matter, because the parties assert this Court's diversity jurisdiction, the Court must determine what law applies, that of the forum or of California. *See*, *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 151 (2d Cir. 2013). Here, the parties have briefed their arguments based on California law and do not appear to dispute its applicability. Thus, California law applies to Plaintiff's defamation claim. *See*, *Stinnett v. Delta Air Lines, Inc.*, No. 18-cv-2704, 2019 WL 1493224, at *10 (E.D.N.Y. 2019); *See also*, *Condit v. Dunne*, 317 F. Supp.2d 344, 352 (S.D.N.Y. 2004) (applying California law rather than New York law in a common law defamation action).

Next, the Court must determine the state rules of decision that are "substantive," and align with federal law. *See*, *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law."). Thus, the Court considers the applicability of California's anti-SLAPP statute in federal court, which is an issue undecided by the Second Circuit. *See*, *Liberty Synergistics Inc. v. Microflo Ltd.*, 637 F. App'x. 33, 34 n.1 (2d Cir. 2016) ("[W]e do not reach the issue of whether California's anti-SLAPP statute is applicable in federal court"). Plaintiff argues that the Court should not apply the anti-SLAPP statute because it requires a "probability" standard that conflicts with Rule 12(b)(6)'s plausibility standard. *See*, Mem. in Opp. at 8-10.

Recently, the Ninth Circuit revisited the different standards courts apply to motions to strike under the anti-SLAPP statute. In *Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834-35 (9th Cir. 2018), the Ninth Circuit held that, "when an anti-SLAPP

motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Id.* (quoting *Z.F. v. Ripon Unified School District*, 482 F. App'x 239, 240 (9th Cir. 2012)). In turn, in defending against a motion to strike, a plaintiff can respond properly by showing sufficiency of the pleadings with no requirement that plaintiff submit evidence. *Id.* at 834. Alternatively, when a motion to strike "challenges the factual sufficiency of a claim, then the [Rule] 56 standard [for summary judgment] will apply." *Id.* "[I]n such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Id.*

Neither party addresses the analytical framework set forth in *Planned Parenthood*. It is unclear whether Defendant asserts a challenge to the legal sufficiency of Plaintiff's Amended Complaint or a challenge to the factual adequacy of Plaintiff's substantive claims. Defendant submitted supporting declarations and attached exhibits as part of her motion to strike, suggesting that Defendant intends to extend the Court's analysis beyond the pleadings. However, Defendant's primary substantive argument challenging the merits of Plaintiff's claim are based on Plaintiff's failure to plead a defamation cause of action sufficiently. As such, the Court need not refer to any of the evidence submitted by Defendant in deciding whether Plaintiff has set forth a legally sufficient claim. The same is true for the additional documentary evidence Plaintiff attached in opposition to Defendant's motion to strike. Defendant's motion to strike is construed as challenging the legal sufficiency of Plaintiff's claims. Therefore, the Court analyzes both Defendant's motion to dismiss and motion to strike under the procedural standards of Rule 12(b)(6).

5

### 2. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6), a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To resolve such a motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept "legal conclusions." *Iqbal*, 556 U.S. at 678. For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id*. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Courts may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See, e.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. *See*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). For this rule, the complaint is considered to include writings and documents attached to it, referenced in it, or integral to it. *See*, Fed. R. Civ. P. 10(c); *Chambers*, 282 F.3d at 152-53. A document is "integral" to the complaint if "the complaint relies heavily upon its terms and effects." *Chambers*, 282 F.3d at 153.

### III. Discussion

#### 1. Defendant's Motion to Dismiss

In support of the motion to dismiss, Defendant argues that: (1) she is immune from suit under Section 230 of the Communications Decency Act ("CDA"); (2) Plaintiff has failed to allege plausibly that Defendant acted with actual malice; and (3) the allegedly defamatory publications are nonactionable opinions. Defendant's Memorandum in Support ("Mem. in Supp."), Dkt. Entry No. 21 at 16-23. Plaintiff opposes arguing that: (1) Defendant is not immune from suit under the CDA; (2) Defendant is not subject to the actual malice standard as Plaintiff is not a public figure; and (3) the defamatory publications express actionable statements of fact. Mem. in Opp. at 7-24. The Court addresses the immunity of Defendant under the CDA and the merits of Plaintiff's defamation claim in turn.

##### a. Immunity under the Communications Decency Act

As an initial matter, Defendant is not immune from suit under Section 230 of the CDA. Under Section 230 of the CDA, users and providers of internet services are shielded from liability arising from defamation and other state law claims that are premised on posts of, or links to, third-

party content.  47 U.S.C. § 230(c)(1).   Section 230(c)(1) provides that "no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."   47 U.S.C. § 230(c)(1).   Section 230(e)(3) preempts any state law that is inconsistent with the protections that the CDA offers.  *See*, *Murawski v. Pataki*, 514 F. Supp.2d 577, 591 (S.D.N.Y. 2007).   Although "[p]reemption under the Communications Decency Act is an affirmative defense, . . . it can still support a motion to dismiss if the statute's barrier to suit is evident from the face of the complaint."   *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015) (quoting *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014)).

Section 230's grant of immunity applies only if the provider or user is not also an "information content provider" of the content that gives rise to the underlying claim. "Information content provider" is defined to include "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."   47 U.S.C. § 230(f)(3).   In applying the statute, courts consider whether the defendant:   (1) is a provider or user of an interactive computer service; (2) the claim is based on information provided by another information content provider; and (3) the claim would treat [the defendant] as the publisher or speaker of that information.   *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016).

Plaintiff plausibly alleges that Defendant authored the purportedly defamatory publication. Thus, Defendant is not immune to suit under the CDA.   Plaintiff contends that the June 29th and July 1st Posts differ from Vargas' original publication.   *See*, Am. Compl. ¶¶ 48-49, 56.   As for the June 29th Post, Plaintiff alleges that Defendant altered the content because Defendant was "the

8

very first person to put [racial slurs] in [Plaintiff's] mouth." Am. Compl. ¶ 49. The Amended Complaint further alleges, and Defendant does not dispute, that Defendant authored the words of the July 1st Posts. As such, the Amended Complaint sufficiently pleads that the defamatory publications were authored and originally posted by Defendant. *See*, Am. Compl. ¶¶ 48-49, 56. Therefore, Plaintiff viably claims that Defendant is an information content provider. Accordingly, Defendant is not entitled to immunity under the Section 230 of the CDA.

### b. The June 29th and July 1st Posts Fail to State a Claim

However, the defamation claims based on the June 29th and July 1st Posts do not survive. Under California law, "[t]he elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Sanders v. Walsh*, 219 Cal. App.4th 855, 862 (2013). If found to be a limited purpose public figure, a plaintiff also must satisfy the actual malice standard by alleging that the defamatory statements were made with knowledge of their falsity or with reckless disregard of their truth or falsity. *Khawar v. Globe Int'l, Inc.*, 19 Cal.4th 254, 264 (1998) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). "[W]hether a plaintiff in a defamation action is a public figure is a question of law for the trial court." *Khawar*, 19 Cal.4th at 264.

"The limited purpose public figure is an individual who voluntarily injects him or herself or is drawn into a specific public controversy, thereby becoming a public figure on a limited range of issues." *Ampex Corp. v. Cargle*, 128 Cal. App.4th 1569, 1577 (2005). To determine whether an individual is a limited purpose public figure, the Court must apply a three-pronged test: (1) there must be a public controversy, which means the issue was debated publicly and had foreseeable and substantial ramifications for nonparticipants; (2) the plaintiff must have

9

undertaken some voluntary act through which she sought to influence resolution of the public issue, and, in this regard, it is enough that the plaintiff seeks to thrust herself into the public eye; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy. *Id.*

The passage of SB 54 was a matter of statewide concern that spurred public debates, litigation, and protests, and thus, was a matter of public controversy. *See*, *D.C. v. R.R.*, 182 Cal. App.4th 1190, 1226 (2010) (holding that matters that affect many people beyond the direct participants are considered issues of public interest); *See also*, *United States v. California*, 921 F.3d 865, 873 (9th Cir. 2019) (affirming the denial of the federal government's request for a preliminary injunction against the enforcement of SB 54).

Notably, Plaintiff injected herself into the public controversy. The Court takes judicial notice of the fact that Plaintiff attended and spoke about SB 54 at multiple city council meetings around the State of California. "[T]he minutes and recordings of the City Council meetings are matters of public record and therefore are the types of materials of which a court may take judicial notice." *Schubert v. City of Rye*, 775 F. Supp.2d 689, 695 (S.D.N.Y. 2011); *See*, *e.g.*, Minutes of the City Council, Thousand Oaks, California (Apr. 10, 2018), Dkt. Entry No. 18-3; *See also*, Mem. in Opp. at 2 (stating that plaintiff attended eight city council meetings on the issue). Additionally, a month prior to the Council Meeting, Plaintiff appeared in a photograph in the Washington Post about the SB 54 controversy. Scott Wilson, A Rogue State, Wash. Post, May 13, 2018, *available at* https://www.washingtonpost.com/news/national/wp/2018/05/13/feature/californias-defiance-of-immigration-law-creates-stark-divides/; *See also*, *Staehr v Hartford Financial Services*, 547 F.3d 406, 424-25 (2d Cir. 2008) (taking judicial notice of publicly available publications).

Under these circumstances, it is apparent that Plaintiff injected herself to the forefront of the controversy "to influence the resolution of the issues involved." *Rudnick v. McMillan*, 25 Cal. App.4th 1183, 1190 (1994) (public figure status where plaintiff approached publisher of one article and expressed concern over issue); *See also*, *Nadel v. Regents of University of California*, 28 Cal. App.4th 1251, 1259 (1994) (finding that defendants injected themselves into public controversy by protesting the construction of volleyball courts). Finally, the allegedly defamatory publications are germane to Plaintiff's participation in the controversy. Specifically, the June 29th and July 1st Posts center on Plaintiff's actions at the Council Meeting in opposition to the passage of SB 54. Accordingly, Plaintiff is a limited purpose public figure and is subject to the actual malice standard.

Applying the actual malice standard, the June 29th Post perishes but the July 1st Posts survive. Limited purpose public figures must establish that the allegedly defamatory statements were made with knowledge of their falsity or with reckless disregard of their truth or falsity. *Ampex*, 128 Cal. App.4th at 1578. Malice will not be inferred solely from evidence of ill will, personal spite or bad motive. *Id.* at 1579. To show reckless disregard of the truth, the party seeking to show actual malice must show that the speakers "entertained serious doubts as to the truth" of their statements. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334 n.6 (1974). It is "not measured by whether a reasonably prudent man would have published or would have investigated before publishing," but by whether "the defendant in fact entertained serious doubts as to the truth of [the] publication." *St. Amant v. Thompson*, 390 U. S. 727, 731 (1968).

As for the June 29th Post, Plaintiff fails to allege that Defendant made the publication "with knowledge of its falsity or with reckless disregard for the truth." The June 29th Post was based,

11

at least, in part on the initial account of the interaction as stated by Alan Vargas. However, the Amended Complaint is void of any allegations that Defendant knew or could infer that Vargas' account of the interaction was inaccurate. Thus, there is no indication that Defendant had any serious doubts about the veracity of the information used in creating the June 29th Post. Accordingly, Plaintiff fails to allege that Defendant published the June 29th Post with actual malice.

However, the same cannot be said about the July 1st Posts. As noted above, Plaintiff's son emailed Defendant about inaccuracies contained in the June 29th Post prior to the publication of the July 1st Posts. Am. Compl. ¶¶ 52-53. Consequently, it is plausible that Defendant learned about the falsity of the content of the July 1st Posts before publication through the emails sent by Plaintiff's son. Thus, the Amended Complaint's allegations about the July 1st Posts satisfy the actual malice standard.

However, the July 1st Posts fail to state a claim for defamation because they express nonactionable statements of opinion. "Under the First Amendment there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974). "However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Id.* at 339-340. To that end, California courts consistently have held that defamation lies only for false statement of fact and opinions are not actionable. *See, e.g.*, *Okun v. Superior Court*, 29 Cal.3d. 442, 450 (1981).

Nevertheless, a statement of opinion may be actionable "' . . . if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.'" *Id*. at 451-452. If a statement of opinion implies a knowledge of facts that may lead to a defamatory conclusion, the implied facts must themselves be true. *Id.* In such a case, the dispositive question is whether a reasonable

12

factfinder could conclude the published statements imply an assertion of defamatory fact. *Id.* If so, the defendant must prove the fact is true. *Id.* (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-20 (1990)). Whether allegedly defamatory statements constitute fact or opinion is a question of law. *Id.* at 450. California courts employ a "totality of the circumstances" test to determine whether an alleged defamatory statement is one of fact or of opinion. *Baker v. Los Angeles Herald Exam'r*, 42 Cal.3d 254, 260 (1986).

Here, taken as a whole, the July 1st Posts are nondefamatory opinions. According to the Amended Complaint, the July 1st Posts accuse Plaintiff of yelling racial slurs at the boy at the Council Meeting. However, the July 1st Posts never mention racial slurs nor do they identify Plaintiff. In sum, the July 1st Posts make no factual allegations about the interaction between Plaintiff and the boy. The caption states that, among other things, the image was an inevitability and that history repeats itself, which are statements that cannot be proven false. Additionally, contrary to Plaintiff's argument, the juxtaposition of the photographs does not "make clear that [Plaintiff] is alleged to have engaged in specific racist conduct akin to that demonstrated during desegregation." Mem. in Opp. at 17. It is not apparent that the subjects of either image are engaging in the specific racist conduct at issue, namely uttering racial slurs. Moreover, the publication does not imply that Defendant had additional knowledge of undisclosed facts about the use of racial slurs. Rather, the July 1st Posts compares the Council Meeting to that of 1957 Little Rock Arkansas without implying additional facts unavailable to the reader. *See*, *Gardner v. Martino*, 563 F.3d 981, 988 (9th Cir. 2009) (observing that a defamatory opinion implies the existence of objective facts not available to the listener). Moreover, assuming that the publication suggests that Plaintiff was screaming at a child or is a racist, such implications are not

13

defamatory. *See*, *Williams v. Moffat*, No. 07-cv-0095, 2007 WL 4166812, at *4 (E.D. Cal. 2007) (holding that the allegation of "yelling and screaming" without more does not sufficiently allege a defamatory statement under California law); *Overhill Farms, Inc. v. Lopez*, 190 Cal. App.4th 1248, 1262 (2010) (holding that general statements accusing a person of being a racist does not constitute a provably false assertion of fact). Thus, Plaintiff fails to allege that the July 1st Posts set forth provable facts necessary to sustain a viable defamation cause of action. Accordingly, Defendant's motion to dismiss is granted.

### 2. Defendant's Motion to Strike under California's Anti-SLAPP Statute

While this action is dismissed under Rule 12(b)(6), Defendant's motion to strike is not moot because Defendant seeks attorneys' fees and costs under the anti-SLAPP statute. The anti-SLAPP statute provides a mechanism for striking a cause of action that arises from the exercise of the right of petition or free speech in connection with a public issue. Cal. Civ. Pro. Code § 425.16(b). Under the law, claims arising out of the exercise of such a right should be stricken "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." *Id.* A prevailing defendant "shall be entitled to recover his or her attorneys' fees and costs." *Id.* § 425.16(c)(1).

The California Supreme Court has established a "two-step process" that courts must follow in deciding a motion to strike under the anti-SLAPP statute. *Equilon Enters v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002). In the first step, a defendant must show that the challenged action "is one arising from protected activity." *Id.* Protected activity as defined by the anti-SLAPP statute includes:

> Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or [ . . . ] any other

conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Pro. Code § 425.16(e).   In the second step, the court must determine "whether the plaintiff has demonstrated a probability of prevailing on the claim."   *Equilon Enters*, 29 Cal.4th at 67.

Defendant satisfies the first prong of the Anti-SLAPP statute as the June 29th and July 1st Posts were made in connection to an issue of public interest, specifically, the public controversy surrounding SB 54.   Cal. Civ. Pro. Code § 425.16(e); *See also*, *Weinberg v. Feisel*, 110 Cal. App.4th 1122, 1132 (2003) (broadly construing the term "public interest" to include events or issues of concern to a substantial number of people).   As to the second prong, because the Amended Complaint fails to allege a viable defamation claim under Rule 12(b)(6), it also fails under the anti-SLAPP statute.   *See*, *Adelson v. Harris*, 973 F. Supp.2d 467, 503 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017) (concluding that the failure to allege a plausible claim under Rule (12)(b)(6) is fatal to a claim under the second prong of an anti-SLAPP analysis).   Thus, Defendant's motion to strike under the anti-SLAPP statute is granted.   Accordingly, Defendant is entitled to attorneys' fees and costs under the statute and is granted leave to make such a motion.

## IV.      Conclusion

For the reasons set forth above, Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and to strike under California's anti-SLAPP statute, Cal. Civ. Pro. Code § 425.16, is granted.   Defendant is granted also leave to seek attorneys' fees and costs pursuant to Cal. Civ. Pro. Code § 425.16(c)(1).

SO ORDERED.

Dated:   Brooklyn, New York
         September 30, 2019

                                                          /s/
                                              DORA L. IRIZARRY
                                                 Chief Judge