UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROSLYN LA LIBERTE,

                              Plaintiff,

            - against -

JOY REID,

                              Defendant.

Case No.: 1:18-cv-05398-DLI-VMS

---

**DEFENDANT JOY REID'S MEMORANDUM OF LAW IN SUPPORT
OF HER MOTION TO REVOKE L. LIN WOOD'S *PRO HAC VICE* ADMISSION**

---

Respectfully submitted,

JOHNREICHMANLAW LLC
56 Oakwood Avenue
Montclair, New Jersey 07043
(917) 626-8025

*-and-*

GIBSON, DUNN & CRUTCHER LLP
333 S. Grand Avenue
Los Angeles, California 90071
(213) 229-7000

*Attorneys for Defendant Joy Reid*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................(ii)

INTRODUCTION .................................................................................................................1

   I.    BACKGROUND ........................................................................................3

   II.   ARGUMENT ............................................................................................4

        A.     The Governing Legal Standards ........................................................ 4

        B.     Mr. Wood Has Sought to Subvert the Constitution and the Rule of Law ............. 8

        C.     Mr. Wood's Attacks on Chief Justice John Roberts ............................................. 12

             1.   Mr. Wood's Maliciously False, Scurrilous Attacks on the Chief Justice ....... 12

             2.   Mr. Wood's Attacks on the Chief Justice Violate the RPC and Make Mr. Wood Unfit to Practice in This or Any Other Court................................ 13

        D.     Mr. Wood's Frivolous Filings and Rule 11 and RPC 3.1 Violations .................. 15

             1.   Mr. Wood's False, Frivolous, and Vexatious Actions Filed Around the Country Have Already Led to the Revocation of His Admission in Delaware .......................................................................... 16

             2.   Other Frivolous Cases Mr. Wood Filed, But Not Relied Upon By the Delaware Court, Provide Separate and Independent Grounds for the Revocation of His *Pro Hac Vice* Admission .................................................. 19

             3.   Mr. Wood Is Responsible and Answerable for the False Filings .................. 21

        E.     Mr. Wood's False Statements to This Court........................................................ 21

   III.  CONCLUSION.........................................................................................24

**Cases**                                                                                      **Page(s)**

*In re 60 East 80th Street Equities, Inc.*,
218 F.3d 109, 120 (2d Cir. 2000) ............................................................................. 15

*Aird v. Ford Motor Co.*,
86 F.3d 216 (D.C. Cir. 1996) .................................................................................... 21

*Betts v. Townsends, Inc.*,
765 A.2d 531, 535 (Del. Supr. 2000) ........................................................................ 18

*Bowyer v. Ducey*,
CV-20-02321, 2020 WL 7238261 (D. Az. Dec. 9, 2020) .............................. 16, 20, 22

*Chambers v. NASCO, Inc.*,
501 U.S. 32, 43 (1991) ............................................................................................... 6

*Doe v. Mastoloni*,
307 F.R.D. 305, 310-311 (D. Conn. 2015) ................................................................. 7

*Erbacci, Cerone, and Moriarty, Ltd. v. U.S.*,
923 F. Supp. 482, 485-86 (S.D.N.Y. 1996) .............................................................. 20

*In re Paul G. Evans*,
801 F.2d 703, 706–7 (4th Cir. 1986) ........................................................................ 14

*Feehan v. Wisc. Elections Comm'n*,
No. 20-cv-1771, 2020 WL 7250219 (E.D. Wis. Dec. 9, 2020) ................................. 16

*In re Goldstein*,
430 F.3d 106, 112 (2d Cir. 2005) ........................................................................... 2, 6

*Matter of Holtzman*,
78 N.Y.2d 184, 192 (1991) ....................................................................................... 14

*In re Jaffe*,
585 F.3d 118, 137-38 (2d Cir. 2009) ...................................................................... 2, 6

*King v. Whitmer*,
No. 20-13134, 2020 WL 7134198 (E.D. Mich. Dec. 7, 2020) ........................ 16, 19, 23

*Matter of Kramer*,
919 F.2d 135 (3d Cir. 1990) ..................................................................................... 15

*L. Lin Wood Jr. v. Raffensperger*,
No. 1:20-cv-04651, 2020 WL 6817513 (N.D. Ga. Nov. 20, 2020),
*aff'd*, 981 F.3d 1307 (11th Cir. 2020) ................................................................. 16, 17

*Matter of Luna v. Dotson*,
97 N.Y.2d 178, 182-83 (2001) ................................................................................. 18

*Martens v. Thomann*,
273 F.3d 159, 175 (2d Cir. 2001) .......................................................................... 7, 8

*Matthews v. Freedman*,
128 F.R.D. 194, 203 (E.D. Pa. 1989), *aff'd sub nom* ............................................... 15

*Matter of Morisseau*,
763 F. Supp. 2d 648, 663 (S.D.N.Y. 2011) ......................................................... 13, 15

*Page v. Oath, Inc.*,
No. S20C-07-030 (Del. Supr. Ct. Dec. 18, 2020) ..................................................... 16

*Page v. Oath, Inc.*,
No. S20C-07-030 (Del. Supr. Ct. Jan. 11, 2021) .................................................. 17-19

*Matter of Palmisano*,
70 F.3d 483, 487 (7th Cir. 1995) ........................................................................... 14

*Pearson v. Kemp*,
No. 1:20-cv-4809, 2020 WL 7040582 (N.D. Ga. Dec. 7, 2020) ................................. 16

*Pintur v. Rogic*,
No. 16-cv-09696, 2017 WL 5565620, at *6 (S.D.N.Y. Oct. 25, 2017) ................... 20, 24

*Raylon LLC v. Complus Data Innovations, Co.*,
Nos. 6:09-CV-355, 6:09-CV-356, 6:09-CV-357,
2015 WL 11121530, at *8-*9 (E.D. Tex. May 4, 2015) .............................................. 21

*Reynolds v. Sims*,
377 U.S. 533, 562 (1964) ........................................................................................ 12

*Ritchie v. Gano*,
No. 07 Civ 7269, 2008 WL 4178152, at *3 (S.D.N.Y. Sept. 8, 2008) .......................... 6

*Sedona Corp. v. Ladenburg Thalmann & Co., Inc.*,
No. 03Civ.3120, 2003 WL 22339357 *3 (S.D.N.Y. Oct. 14, 2003) ............................. 7

*Steele v. Bell*,
No. 11 Civ 9343, 2012 WL 6641491, at *2 n.1 (S.D.N.Y. Dec. 19, 2012) .................... 6

*United States v. Seltzer*,
227 F.3d 36, 42 (2d Cir. 2000) ................................................................ 6

*Matter of Terry*,
271 Ind. 499, 502 (Ind. 1979) ............................................................... 14

*Ward v. Jackson*,
CV 2020-015285 at p. 8 (Maricopa Co. Supr. Ct. Dec. 4, 2020),
*aff'd*, CV 2020-0343 (Az. Dec. 8, 2020) ............................................ 22-23

*Matter of Wisehart*,
281 A.D.2d 23, 31-32 (1st Dep't 2001) ................................................ 14

*Matter of Yao*,
231 A.D.2d 346, 348 (1st Dep't 1997) ................................................. 18

## Statutes and Rules

U.S. Const. art. I, § 3, cl. 4 .................................................................... 8

N.Y. Const. art. XIII, § 1 ............................................................... 1, 5, 12

*N.Y. Jud. Law*, § 466 (McKinney 2020) ..................................... 1, 5, 12

*Fed. R. Civ. P.* 11 ..................................................................... 5, 15

Fed. R. Civ. P. 11, Advisory Committee Note to 1993 Amendment ........... 21

*E.D.N.Y. Local Rule* 1.3 ......................................................... 6, 17

*E.D.N.Y. Local Rule* 1.5 ......................................................... 6, 17

*New York Rules of Professional Conduct* Preamble ............................. 5

*New York Rule of Professional Conduct* 3.1 ................................ 5, 15

*New York Rule of Professional Conduct* 3.3 ................................ 5, 21

*New York Rule of Professional Conduct* 4.1 ................................ 4, 12

*New York Rule of Professional Conduct* 8.3 ...................................... 5

*New York Rule of Professional Conduct* 8.4 ................................ 4, 12

**<u>Treatises</u>**

Roy D. Simon, Jr., *Simon's N.Y. Rules of Prof. Conduct Annotated* § 8.4:15 (2020) ................. 13

## INTRODUCTION

Defendant Joy Reid submits this memorandum of law in support of her motion to revoke the *pro hac vice* admission of L. Lin Wood, one of Plaintiff Roslyn La Liberte's attorneys in this action.

Mr. Wood's *pro hac vice* admission should be revoked for four reasons. First, the oath of admission to practice in any federal court requires each attorney to pledge that he "will conduct [himself] uprightly and according to law, and that [he] will support the Constitution of the United States." Declaration of John H. Reichman ("Reichman Decl.") Ex. AA[1]. In New York specifically, every attorney must likewise pledge to "solemnly swear (or affirm) that [he] will support the Constitution of the United States." N.Y. Const. art. XIII, § 1; N.Y. Jud. Law § 466 (McKinney 2020). Mr. Wood, however, has sought and is seeking to subvert, not support, the rule of law, Article II, Section 1 of the Constitution, and the Twelfth Amendment, which call for the peaceful transfer of power and the election of the President and Vice President, culminating with the Vice President presiding over the counting of the electoral college votes at a joint session of Congress. Mr. Wood sought to prevent this constitutional process from going forward by urging the imposition of martial law, making false statements about election results, encouraging the siege of the United States Capitol, and even calling for the arrest and assassination of then-Vice President Mike Pence. *See* Reichman Decl. ¶¶ 8-11, 14, 22-23, 25.

Second, Mr. Wood's outrageous and unfounded attacks on the Chief Justice of the United States, John G. Roberts, Jr., violate RPC 8.4 and 4.1 and are grounds for revocation of his *pro hac vice* status. Mr. Wood has accused the Chief Justice of arranging "an illegal adoption of two young children from Wales through Jeffrey Epstein" and saying during a telephone call that former

---

[1] All citations to exhibits refer to exhibits within the Reichman Declaration.

President Trump is a "m-----f-------" who could not be allowed another term. Ex. Y at 4; Reichman Decl. ¶ 32. Mr. Wood has also suggested that the Chief Justice is a murderous pedophile, was mixed up with Jeffrey Epstein and involved in the death of Justice Scalia, was being blackmailed, and was trafficking children. Ex. Y at 3-4; Reichman Decl. ¶ 33. Even after Ms. Reid's counsel raised these issues with this Court on January 11 and Mr. Wood denied them, he repeated and amplified these false claims on the social media website Telegram. Reichman Decl. ¶¶ 25, 34. Numerous decisions in New York have held that far tamer false statements and misconduct are grounds for discipline, including loss of the privilege to practice in the jurisdiction. *See*, *e.g.*, *In re Jaffe*, 585 F.3d 118, 137-38 (2d Cir. 2009) (holding that sanction requiring withdrawal from the bar was appropriate following a pattern of "repeated neglect of . . . cases"); *In re Goldstein*, 430 F.3d 106, 112 (2d Cir. 2005) (affirming sanctions where attorney's breach of his "representational duties" resulted in his client personally seeking the aid of the court to finalize the settlement of their case).

Third, Mr. Wood has consistently violated Federal Rule of Civil Procedure ("FRCP") 11 and New York Rule of Professional Conduct ("RPC") 3.1 by filing at least five frivolous lawsuits relating to the 2020 presidential election based on outright lies and non-existent legal theories. One Delaware court has already revoked Mr. Wood's *pro hac vice* admission, finding that the "conduct of Mr. Wood, albeit not in my jurisdiction, exhibited a toxic stew of mendacity, prevarication and surprising incompetence. What has been shown in court decisions in our sister States satisfies me that it would be inappropriate and inadvisable to continue Mr. Wood's permission to practice before this Court." Ex. X at 7. This Court should reach the same conclusion. This Court's Local Rules 1.3 and 1.5 make suspension or discipline in another State a basis for refusing *pro hac vice* admission and imposing discipline. Moreover, the doctrine of collateral

estoppel precludes Mr. Wood from contesting the Delaware court's findings that "the Georgia case [brought by Mr. Wood] was textbook frivolous litigation" and that Mr. Wood filed or caused to be filed an affidavit which contained materially false information. *Id.* at 6.

Fourth, Mr. Wood has exhibited a lack of candor with this Court and a lack of respect for his duties as an officer of the court. At the January 11 conference, Mr. Wood made a number of false statements: i) he never called for people to go to the Capitol, ii) he never said anyone should break the law, and iii) no court had found that evidence of election fraud was lacking, each of which are demonstrably belied by Mr. Wood's tweets and other social media posts, and the dismissal of all five of the cases he brought around the country falsely claiming election fraud. Moreover, Mr. Wood told this Court he "didn't have anything to do with" the complaints that were filed bearing his name—a claim that, if true, would be a violation of FRCP 11 in and of itself. Ex. K at 10.

Importantly, this motion is not based on what Mr. Wood during the January 11 conference called "rhetorical hyperbole," or on his ideology or viewpoint. *Id.* at 12. The First Amendment protects the right to express one's opinions, even offensive opinions using colorful and hyperbolic language. But Mr. Wood has traveled far beyond that boundary, encouraging the siege on the Capitol to thwart the vote count, falsely attacking the Chief Justice and the judicial system, filing frivolous lawsuits, and violating with impunity the rules of the legal profession. This Court should revoke his *pro hac vice* status to protect the rule of law and the public's confidence in it.

## I. BACKGROUND

Mr. Wood's motion for admission *pro hac vice* was granted at the outset of this case on October 11, 2018. Order on 10/11/18. At the time, two of Mr. Wood's former partners also moved for and were granted *pro hac vice* admission. *Id.*

Mr. Wood's former partners subsequently withdrew from this action. Dkt. 42. They also sued Mr. Wood for fraud, among other claims for relief. Ex. A at 61. Their complaint alleges that Mr. Wood engaged in physical and verbal assaults on his former partners, including by communicating anti-Semitic slurs and participating in other misconduct. *Id.* at 42-43.

Mr. Wood's application for *pro hac vice* admission in this Court stated that he was not the subject of any disciplinary proceedings, as required by Local Rule 1.3. Dkt. 7 at 1. As described below, *infra* § II, that is no longer the case and Mr. Wood has not informed this Court that there are pending disciplinary proceedings against him in Michigan, or that a court has already revoked his *pro hac vice* admission in Delaware.

Mr. Wood has had scant personal involvement in this case. One of his former partners was primarily responsible for opposing Defendant's motion to dismiss and successfully arguing the appeal of that dismissal in the Second Circuit. Reichman Decl. ¶ 5. Mr. Wood did not participate in any of the attorney conferences regarding scheduling and discovery prior to the January 11 conference—Defendant's counsel was repeatedly informed that Mr. Wood was too busy attending to his election lawsuits to participate in this action. *Id.*

## II. ARGUMENT

### A.   The Governing Legal Standards

RPC 8.4(c) provides:

A lawyer or law firm shall not:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) engage in illegal conduct that adversely reflects on the lawyer's honesty, trustworthiness or fitness as a lawyer;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice. . . .

Moreover, RPC 4.1 states that "[i]n the course of representing a client, a lawyer shall not knowingly make a false statement of fact or law to a third person." This Rule is not limited to

statements made in court. *See also* RPC 3.3 (a "lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal").

In addition, a lawyer practicing before the federal and New York courts has a duty to respect the law and conduct himself in a way that encourages others to do so, and must take an oath to follow the law and support the Constitution. Ex. AA; N.Y. Const. art. XIII, § 1; N.Y. Jud. Law § 466 (McKinney 2020). A lawyer is "an officer of the legal system" with "a duty to uphold the legal process; to demonstrate respect for the legal system; . . . and to promote . . . the administration of justice." RPC Preamble § 1. "In addition, a lawyer should further the public's understanding of and confidence in the rule of law and the justice system because, in a constitutional democracy, legal institutions depend on popular participation and support to maintain their authority." *Id.*

While "[e]very lawyer is responsible for observance of the Rules," each is also supposed to "aid in securing their observance by other lawyers." *Id.* at § 5. When a lawyer becomes aware of another lawyer's violation of the RPC that "raises a substantial question as to that lawyer's honesty, trustworthiness or fitness," he or she is obligated to make a report to an authority empowered to investigate or act. RPC 8.3(a).

FRCP 11 and RPC 3.1 forbid lawyers from filing frivolous and unwarranted lawsuits with no basis in fact or law. *See* Fed. R. Civ. P. 11 ("By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that . . . it is not being presented for any improper purpose . . . ; the claims, defenses, and other legal contentions are warranted . . . ; [and] the factual contentions have evidentiary support. . . ."); RPC 3.1 ("A lawyer shall not bring . . . a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous.").

The New York Rules of Professional Conduct govern the conduct of attorneys in federal courts sitting in New York as well as in New York state courts. *Ritchie v. Gano*, No. 07 Civ. 7269, 2008 WL 4178152, at *3 (S.D.N.Y. Sept. 8, 2008) ("New York's Code of Professional Responsibility . . . establishes appropriate guidelines for the professional conduct of attorneys in the United States District Courts in this state."); *see also Steele v. Bell*, No. 11 Civ. 9343, 2012 WL 6641491, at *2 n.1 (S.D.N.Y. Dec. 19, 2012). Attorneys arguing before this Court must thus abide by New York's RPC. E.D.N.Y. Local Rule 1.3. To interpret the RPC, federal courts sitting in New York look to decisions of the New York state courts. *Id.* at Rule 1.5(b)(5).

Local Rule 1.3(c) requires a *pro hac vice* applicant to disclose "whether the applicant has ever been censured, suspended, disbarred or denied admission or readmission by any court," and Rule 1.5(b)(2) specifically recognizes that clear and convincing evidence that an attorney was subject to suspension or disciplinary action in another State provides grounds for discipline in this Court.

A court may "determine, based on an attorney's prior behavior, that []he will be unable to conform h[is] future conduct to expected professional norms, and, as a result, that h[is] ability to practice in this Court should be barred as a corrective measure in order to protect the public, other attorneys and litigants, the Court, and the administration of justice." *In re Jaffe*, 585 F.3d at 121. RPC 8.5 provides that an attorney is subject to disciplinary authority such as this for improper conduct that occurs in other jurisdictions. Moreover, a federal court possesses certain inherent powers "to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). This includes the power to "police the conduct of attorneys as officers of the court" and to impose sanctions for attorney misconduct. *United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000); *In re Goldstein*, 430 F.3d at 110.

"Admission *pro hac vice* is not a right but a privilege, the granting of which rests in the sound discretion of the presiding judge." *Sedona Corp. v. Ladenburg Thalmann & Co., Inc.*, No. 03 Civ. 3120, 2003 WL 22339357 *3 (S.D.N.Y. Oct. 14, 2003) (internal quotations omitted). Exercising this discretion involves considering:

> [O]n the one hand, a litigant's right to choose its counsel, which should not lightly be interfered with, and, on the other hand, the Court's right to assure itself that an attorney applicant is familiar with the Federal Rules of Civil Procedure, the Local Rules . . . , this Court's Individual Rules, and the customs and practices of this Court, and that the attorney will conduct himself professionally and ethically, and will not disrupt the proper functioning of the Court.

*Id.* (internal citations and quotations omitted).

In some instances, prior to revoking an attorney's *pro hac vice* status, other intermediary steps are considered, such as motions to compel or orders imposing monetary sanctions. *See Doe v. Mastoloni*, 307 F.R.D. 305, 310-11 (D. Conn. 2015) (finding revocation of *pro hac vice* admission was not yet warranted where attorney failed to provide adequate discovery responses or agree to a protective order because the moving party could have first moved for a motion to compel, which would have allowed the court to make a finding of bad faith). Here, as shown below, no intermediary motion or order is necessary before the Court can revoke Mr. Wood's *pro hac vice* status. This is not a discovery complaint—Mr. Wood cannot correct the violence he encouraged, or the lies he told about the Chief Justice, or the frivolous actions he filed in other jurisdictions. Further, a Delaware court already found that Mr. Wood's filings in numerous jurisdictions were frivolous. *See infra* § D(1). As such, cases like *Doe v. Mastoloni* are inapplicable here.

Due process requires that courts provide notice and an opportunity to be heard before imposing any kind of sanction such as the revocation of *pro hac vice* status. *Martens v. Thomann*, 273 F.3d 159, 175 (2d Cir. 2001). The revocation of such status must be evaluated as though the

court was considering disqualifying a "regular member" of the district's bar.  *Id.* at 175-76.  As demonstrated below, no regular member of the New York bar who acted as Mr. Wood has would be allowed to set foot in a New York courtroom.

**B.     Mr. Wood Has Sought to Subvert the Constitution and The Rule of Law**

Article II, Section 1, Clauses 2 and 3, and the Twelfth Amendment of the United States Constitution provide for states to appoint electors and for those electors to then elect the President and Vice President.  The votes are then counted on January 6 in a joint session of Congress, presided over by the President of the Senate, who the Constitution designates to be the sitting Vice President of the United States.  U.S. Const. art. I, § 3, cl. 4.  These constitutional provisions form a cornerstone of our democracy, and Mr. Wood sought to subvert them.

Mr. Wood is a major proponent of the falsehood that former President Trump won the 2020 presidential election in a landslide, and that President Biden stole the election.  *See* Ex. B; Reichman Decl. ¶ 8.  In furtherance of that view, Mr. Wood objected to the counting of the electoral votes and the peaceful transfer of power.  For example, in early December, Mr. Wood led a rally in Georgia, where he called for the imprisonment of the Georgia Governor and Secretary of State for carrying out their duty of counting Georgia's votes in the presidential election.  Reichman Decl. ¶ 7 n.3, video at 3:10.  He instructed those present to "go to the [Georgia] Governor's mansion" and "circle it" to force the Georgia legislature into a special session.  *Id.*  Later that month, Mr. Wood called for no electoral vote to occur in any State.  Ex. V at 24 (stating "there should be NO Electoral College vote in any state today").  That effort failed, but Mr. Wood persisted.

On social media sites like Twitter and Parler, Mr. Wood advocated for martial law, *i.e.*, for the military to replace our duly elected representatives with President Trump remaining as the

Commander in Chief. *See* Reichman Decl. ¶ 8. Disturbingly, on January 1, Mr. Wood tweeted that Vice President Pence should face arrest and "execution by firing squad." *Id.* ¶ 9.

Early on January 6, the day on which Vice President Pence was scheduled to count the electoral votes and the day of the siege of the United States Capitol, Mr. Wood posted a tweet saying it was "1776 Again" and that "[t]he time ha[d] come . . . to take back our country . . . [and] fight for our freedom." *Id.* ¶ 10. As people were gathering for the assault on the Capitol, Mr. Wood told his followers to "lock up Traitor Mike Pence" for allegedly conspiring with Rod Rosenstein to "overthrow our government." *Id.* ¶ 11.

At 12:47 p.m., six minutes before the Capitol breach, *see* Ex. C at 5, Mr. Wood called Mr. Pence a "TRAITOR" and said he had evidence to support his claims. Reichman Decl. ¶ 12. A few hours later, as the siege continued, Mr. Wood tweeted to his 1.1 million followers, saying everyone should follow the advice of Bill White, who urged the mob to "enter the US Capitol building . . . sit in the peoples seats . . . fight for us . . . [and] fight for Trump. . . ." Reichman Decl. ¶ 13.

Mr. Wood's words were heard by individuals who attacked the Capitol on January 6. The social media account of Ashli Babbitt, a woman killed during the assault on the Capitol when she tried to invade the House chamber, followed Mr. Wood on Twitter. Ex. D at 7-13 (chronicling Babbitt's repeated retweets of Mr. Wood's posts). Her final tweet before her death was a retweet of one of Mr. Wood's posts on the day of the insurrection. The tweet contained what Mr. Wood deemed his "MUST BE DONE LIST," and listed his three goals of charging Mike Pence with treason, charging Rod Rosenstein with treason, and demanding that Chief Justice John Roberts resign. Reichman Decl. ¶ 14.

The "Three Percenters"—one of "the two most prominent rightwing militia groups that participated in the mob onslaught on Congress," Ex. E at 1—are also significant supporters of Mr. Wood. The Three Percenters posted a short manifesto expressing their preparedness "'to take back our country from the pure evil that is conspiring to steal our country away from the American people.'" Ex. F at 5. That statement praised Mr. Wood as an "inspirational figure[] in th[at] looming battle." *Id.*

At the insurrection, the Three Percenters raised their "Release the Kraken" flag, which is a reference to a comment made by Mr. Wood's co-counsel in the election litigations, Sidney Powell (and then amplified by Mr. Wood), that Mr. Wood and Ms. Powell were releasing the Kraken, *i.e.*, exposing baseless voter fraud claims and planning to overturn the presidential election. *See* Reichman Decl. ¶ 16 n.10. Ms. Powell and Mr. Wood are known as the "'Kraken' lawyers." Ex. H at 17.

Mr. Wood is also a hero to the followers of the QAnon conspiracy theory, *see* Ex. D at 2, who believe that Mr. Trump and a secret military intelligence team are battling a "deep state" made up of Satan-worshipping pedophiles in the government, media, and Hollywood. Ex. G at 1-2. In the wake of the Capitol siege, Mr. Wood falsely claimed Antifa and Black Lives Matter were responsible for the insurrection. He has alleged that no one died during the Capitol insurrection (five people died), that the event was "staged," and that those who breached the Capitol were "Antifa dressed up as Trump people." Ex. HH at 2-3. In one instance, Mr. Wood posted a photograph of a man named Josiah Colt, falsely suggesting he was not a supporter of Mr. Trump. Reichman Decl. ¶ 18. Mr. Colt, however, confirmed he was the man in the photograph and sitting in former Vice President Pence's chair in the well of the Senate, and Mr. Colt is in fact a supporter of Mr. Trump. *See* Ex. I at 1.

Mr. Wood also tweeted a photo of Jake Angeli, the now infamous "QAnon Shaman" who occupied the Senate floor, Reichman Decl. ¶ 20 n.14, video at 0:36, 7:36, and falsely claimed Mr. Angeli was part of Antifa, writing "Indisputable photographic evidence that antifa violently broke into Congress today. . . ." *Id.* ¶ 17.

Mr. Wood repeated his demonstrably false claims about Antifa to this Court on January 11, saying, "a Capitol Police Officer had opened the doors to let people in that appear to be, and the evidence seems to be suggesting, were members of either Antifa or Black Lives Matter." Ex. K at 12. There is no evidence suggesting the siege at the Capitol had anything to do with Antifa or Black Lives Matter.

Following Mr. Wood's barrage of false and violent tweets, his Twitter account was terminated on January 7. One of his final tweets accused Vice President Pence of being a "TRAITOR, a Communist Sympathizer & a Child Molester." Reichman Decl. ¶ 22. The tweet also said to "Lock him up." *Id.* Following his Twitter suspension, Mr. Wood turned to the social media sites Parler and Telegram to communicate with his followers.

On January 7, only a day after the attack on the Capitol, Mr. Wood again directly urged Mr. Pence's execution, saying "Get the firing squads ready. Pence goes FIRST." Reichman Decl. ¶ 23. This call for the execution of the sitting Vice President was directed toward user feeds nearly three million times, Ex. L at 6, and was viewed at least 788,000 times, according to a screenshot on the Internet Archive. Ex. M at 7. According to Fox News, Mr. Wood is being investigated by the United States Secret Service concerning his death threats against the Vice President. Ex. MM at 1-2.

On January 18, 2021, two days before Inauguration Day and still continuing to sow doubt over the election, Mr. Wood posted on Telegram that "the 'election' of Biden was a fraud" and

claiming "Trump won a landslide re-election" and will be "President for at least 4 more years." Reichman Decl. ¶ 25.  The following day he continued to attack Mr. Pence, saying "Vice President Pence must resign today.  Pence is on videos captured by FBI.  Discussions about murdering judges." *Id.*

The right to vote is fundamental and preserves all other rights in the United States Constitution.  *See Reynolds v. Sims*, 377 U.S. 533, 562 (1964).  Mr. Wood's conduct and lies sought to undermine democracy and this bedrock right.  Mr. Wood has violated his solemn oath that he "will conduct [himself] uprightly and according to law, and that [he] will support the Constitution of the United States."  Ex. AA; *see also* N.Y. Const. art. XIII, § 1; N.Y. Jud. Law § 466 (McKinney 2020).  Through his numerous false statements in support of this effort, he violated RPC 4.1 and 8.4 many times over.  *See* RPC 4.1 ("lawyer shall not knowingly make a false statement of fact or law to a third person"); RPC 8.4 ("lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation").  He should be disqualified from appearing in this Court because of his many actions to subvert the Constitution and the rule of law.

**C.      Mr. Wood's Attacks on Chief Justice John Roberts**

**1.      Mr. Wood's Maliciously False, Scurrilous Attacks on the Chief Justice**

Mr. Wood has repeatedly, viciously, and falsely attacked Chief Justice John Roberts.  He has stated that the Chief Justice arranged the "illegal adoptions" of two children through Jeffrey Epstein, and linked the Chief Justice with the death of Justice Scalia and pedophilia. After pondering Justice Robert's motives on Twitter, Mr. Wood then asked if the Chief Justice was a member of any "club or cabal requiring minor children as an initiation fee" in the following tweets:

> A couple of more questions for Chief Justice John Roberts:
> (1) You are recorded discussing Justice Scalia's successor before date of his sudden death. How did you know Scalia was going to die?
> (2) Are you a member of any club or cabal requiring minor children as initiation fee? pic.twitter.com/jGxfgLCk4D

— Lin Wood (@LLinWood) December 31, 2020

Reichman Decl. ¶ 31.

> I have linked Roberts to illegal adoption, Jeffrey Epstein, pedophilia & prior knowledge of Scalia's death.
> — Lin Wood (@LLinWood) December 31, 2020

*Id.* Mr. Wood has alleged that the Chief Justice was being blackmailed, including in tweets that were retweeted by Ashli Babbitt shortly before her death as she stormed the Capitol. Mr. Wood has also implied that the Chief Justice said, during a phone call in August, that then President Trump is a "m-----f-----" who could not be allowed to have another term. *Id.* ¶ 32. Mr. Wood's attacks on Chief Justice Roberts have continued unabated to this day via the social media website Telegram. *Id.* ¶¶ 25, 34. For example, on January 19, Mr. Wood posted that "Chief Justice John Roberts must resign. . . . Jeffrey Epstein arranged for the adoption of Roberts' children. Roberts used the children to gain entry into the cabal of power & influence." *Id.* ¶ 34.

Mr. Wood has also attacked the judiciary as a whole. In trying to explain away that he and other lawyers have lost all 60 lawsuits they brought challenging the presidential election results, he was quoted in *The New Yorker* falsely claiming, "Nobody loses 0-60, unless the deck is stacked!" Ex. HH at 1.

### 2. Mr. Wood's Attacks on the Chief Justice Violate the RPC and Make Mr. Wood Unfit to Practice in This or Any Other Court

Mr. Wood's false attacks on the Chief Justice violate RPC 8.4(c), which "encompasses every kind of dishonesty, fraud, deceit, or misrepresentation, whether inside or outside law practice and whether civil or criminal." Roy D. Simon, Jr., *Simon's N.Y. Rules of Prof. Conduct Annotated* § 8.4:15 (2020). Unsupported attacks on a judge violate this Rule and, in New York and the federal courts, are grounds for disbarment. *Matter of Morisseau*, 763 F. Supp. 2d 648, 663 (S.D.N.Y. 2011) ("[T]he direct and implied accusations that Judge Kaplan is dishonest, violate a number of

13

Disciplinary Rules and Rules of Professional Conduct as reflected in the findings below."
(citing *In re Paul G. Evans*, 801 F.2d 703, 706–7 (4th Cir. 1986) (unsubstantiated allegations that
judge had religious bias merited disbarment from federal court))).

The reason for the prohibition against false and unfounded attacks on judges is not to
protect individual judicial officers, but rather to safeguard the administration of justice, *see* RPC
8.4(d), and the integrity of the judicial system:

> Unlike defamation cases, "[p]rofessional misconduct, although it may directly
> affect an individual, is not punished for the benefit of the affected person; the wrong
> is against society as a whole, the preservation of a fair, impartial judicial system,
> and the system of justice as it has evolved for generations."

*Matter of Holtzman*, 78 N.Y.2d 184, 192 (1991) (citing *Matter of Terry*, 271 Ind. 499, 502 (Ind.
1979)).

An attorney who makes serious accusations of wrongdoing against a judge must be able to
present evidence demonstrating the reasonableness of his belief that those accusations are true.
*Matter of Palmisano*, 70 F.3d 483, 487 (7th Cir. 1995) (finding that attorney's failure to provide
support for the slurs he made against the judiciary was grounds to justify the disciplinary action
taken). Mr. Wood told this Court that his statements were simply "rhetorical hyperbole," Ex. K at
12, but his attacks on the Chief Justice are false statements of fact, not hyperbole or opinion, and

> [i]n this jurisdiction, an attorney who makes false, scandalous or other improper
> attacks upon a judicial officer is subject to discipline. Attacks such as respondent's
> derogatory, undignified and inexcusable remarks tend to undermine the respect and
> confidence of the members of his profession and of the society which he serves,
> and will not be countenanced.

*Matter of Wisehart*, 281 A.D.2d 23, 31-32 (1st Dep't 2001) (imposing a suspension on an attorney
for making false statements about sitting judges) (internal citations and quotations omitted); *see
also Matter of Palmisano*, 70 F.3d at 487.

Unless Mr. Wood can present in his answering papers plausible evidence to support each of his slurs against the Chief Justice, he should be disqualified from practicing in this Court. He of course cannot do so because those allegations are maliciously false—as such, this motion should be granted.

**D.     Mr. Wood's Frivolous Filings and Rule 11 and RPC 3.1 Violations**

FRCP 11 provides that when presenting a pleading to a court, "whether by signing, filing, submitting, or later advocating it . . . an attorney . . . certifies that to the best of [his] knowledge, information, and belief . . . it is not being presented for any improper purpose, . . . [and] the claims . . . are warranted . . . ." "[G]iven the important function of Rule 11 sanctions as a deterrent against an attorney's misconduct in the future," an attorney's past brushes with Rule 11 are relevant in determining appropriate discipline and whether to permit the attorney's admission *pro hac vice*. *Matthews v. Freedman*, 128 F.R.D. 194, 203 (E.D.Pa. 1989), *aff'd sub nom.*; *Matter of Kramer*, 919 F.2d 135 (3d Cir. 1990); *see also In re 60 East 80th Street Equities, Inc.*, 218 F.3d 109, 120 (2d Cir. 2000) (finding attorney's past sanctionable conduct was relevant to court's inquiry on the imposition of sanctions).

RPC 3.1 provides that an attorney shall not bring non-meritorious claims and contentions, and an attorney's conduct is "frivolous" if the lawyer "knowingly advances a claim or defense that is unwarranted. . . ." In *Morisseau*, 763 F. Supp. 2d at 663-65, the court revoked an attorney's ability to appear *pro hac vice* based on various violations of the RPC, including Rule 3.1, where the attorney had filed numerous, frivolous filings and had "commenced a series of unsupported and hate-filled public attacks" against Southern District Judge Lewis Kaplan. Violations even more severe have occurred here.

After the presidential election, Mr. Wood and his co-counsel, Sidney Powell, filed four frivolous lawsuits in swing states, Georgia, Wisconsin, Arizona, and Michigan, where they falsely claimed voter fraud and sought to overturn the election results. Each of these cases was dismissed as Mr. Wood and his co-counsel could not even state a legally cognizable theory, let alone provide evidence, for their unsupported claims. *See Feehan v. Wisc. Elections Comm'n*, No. 20-cv-1771, 2020 WL 7250219 (E.D. Wis. Dec. 9, 2020); *Bowyer v. Ducey*, No. CV-20-02321, 2020 WL 7238261 (D. Az. Dec. 9, 2020); *Pearson v. Kemp*, No. 1:20-cv-4809, Ex. Q at 2; *King v. Whitmer*, No. 20-13134, 2020 WL 7134198 (E.D. Mich. Dec. 7, 2020). Mr. Wood also filed a *pro se* action in Georgia, in which the district court denied his motion for a temporary restraining order. *L. Lin Wood Jr. v. Raffensperger*, No. 1:20-cv-04651, 2020 WL 6817513 (N.D. Ga. Nov. 20, 2020).

### 1. Mr. Wood's False, Frivolous, and Vexatious Actions Filed Around the Country Have Already Led to the Revocation of His Admission in Delaware

In *Page v. Oath, Inc.*, No. S20C-07-030, the Superior Court of Delaware *sua sponte* issued a "Rule to Show Cause" with respect to whether Mr. Wood's *pro hac vice* status should be revoked because of his role in the Wisconsin action and the *pro se* lawsuit in Georgia. Ex. W. The order stated that in the Wisconsin case it appeared that i) the suit was filed on behalf of a person who had not authorized it; ii) the complaint and related papers had multiple, serious deficiencies as outlined in the order of dismissal of the Wisconsin action; and iii) a citation to a case regarding a point of critical law, including a quotation, was found to be fictitious. *Id.* at 3. The Delaware court further stated that Mr. Wood's conduct in Wisconsin appeared to violate Delaware's rules of professional conduct with respect to competence, meritorious claims and contentions, candor to the tribunal, and misconduct. *Id.* at 1. The Delaware court also cited the decision in the Georgia *pro se* case, where Mr. Wood sought to prevent Georgia's certification of the votes in the general election for President. *Id.* at 2.

After providing Mr. Wood with a full opportunity to respond to its show cause order, the Superior Court in Delaware revoked his *pro hac vice* status. Ex. W at 4; Ex. X at 8. The court began its analysis by stating, as is the case here, that it is required to ensure those practicing before the court "are of sufficient character, and conduct themselves with sufficient civility and truthfulness." Ex. X at 5. The court rejected Mr. Wood's argument that he merely made harmless errors in the Georgia litigation, finding "the Georgia case was textbook frivolous litigation." *Id.* at 6; *see also Wood*, 2020 WL 6817513, at *6, *13 ("[T]he futility of Wood's standing argument is particularly evident in that his sole relied-on authority—*Meek v. Metropolitan Dade County, Florida*, 985 F.2d 1471 (11th Cir. 1993)—is no longer good law. The Eleventh Circuit expressly abrogated its holding in that case over thirteen years ago"), *aff'd*, 981 F.3d 1307 (11th Cir. 2020). The Delaware court further found that Mr. Wood's submission of an error-ridden affidavit of an expert witness was "either mendacious or incompetent." Ex. X at 6.

Eastern District Local Rules 1.3 and 1.5 specifically contemplate disciplinary actions in other jurisdictions and their impact on admission in this district. Rule 1.3(c) requires any *pro hac vice* applicant to disclose "whether the applicant has ever been censured, suspended, disbarred or denied admission or readmission by any court." Rule 1.5(b)(2) states that clear and convincing evidence that an attorney was subject to suspension or disciplinary action in another state provides grounds for discipline in the Eastern District of New York. The disciplinary action taken in Delaware is, standing alone, grounds to grant this motion.

Moreover, under the doctrine of collateral estoppel, Mr. Wood is precluded from contesting the Delaware court's findings. As shown above, federal courts sitting in New York look to decisions of the New York state courts to determine attorney discipline. *Id.* at Rule 1.5(b)(5). Under New York's conflict of laws rules, New York gives the same preclusive effect to the

Delaware order as Delaware would under its law. *See Matter of Luna v. Dotson*, 97 N.Y.2d 178, 182-83 (2001).

Under Delaware law, the collateral estoppel doctrine may be invoked to preclude a party from raising an issue where:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[2]

*Betts v. Townsends, Inc.*, 765 A.2d 531, 535 (Del. Supr. 2000). Whether Mr. Wood made baseless, false, and incompetent filings was an issue already adjudicated by the court in Delaware, and Mr. Wood had a full and fair opportunity to litigate those issues there.

The Delaware court also considered and rejected Mr. Wood's excuses for the incompetence he exhibited in the Wisconsin action. The court found these were not "'proof reading errors'" as Mr. Wood claimed. Ex. X at 6-7. "Failure to certify a complaint for injunction or even serve the Defendants are not 'proof reading errors.' The Complaint would not survive a law school civil procedure class." *Id.*

The Delaware court concluded:

> Prior to the pandemic, I watched daily counsel practice before me in a civil, ethical way to tirelessly advance the interests of their clients. It would dishonor them were I to allow this *pro hac vice* order to stand.

*Id.* at 7.

Finally, the Delaware court made these findings regarding Mr. Wood's incitement of the insurrection at the Capitol on January 6:

---

[2] New York's collateral estoppel doctrine is similar to Delaware's, and the Delaware ruling would have the same preclusive effect under New York's doctrine as it does under Delaware's. *See Matter of Yao*, 231 A.D.2d 346, 348 (1st Dep't 1997) (applying collateral estoppel in a disciplinary proceeding).

One final matter. A number of events have occurred since the filing of the Rule to Show Cause. I have seen reports of "tweets" attributable to Mr. Wood. At least one tweet called for the arrest and execution of our Vice-President. Another alleged claims against the Chief Justice of the Supreme Court of the United States which are too disgusting and outrageous to repeat. Following on top of these are the events of January 6, 2021 in our Nation's Capitol. No doubt these tweets, and many other things, incited these riots.

*Id.* at 7-8.

**2.     Other Frivolous Cases Mr. Wood Filed, But Not Relied Upon By the Delaware Court, Provide Separate and Independent Grounds for the Revocation of His *Pro Hac Vice* Admission**

Other frivolous election cases Mr. Wood filed, apart from the Wisconsin and Georgia *pro se* actions addressed by the Delaware court, provide additional grounds for the revocation of his *pro hac vice* status. In Michigan, the district court found that the plaintiffs' claims were clearly barred by Sovereign Immunity under the Eleventh Amendment of the Constitution, laches, mootness, and the plaintiffs' lack of standing. *King*, 2020 WL 7134198, at *3-9. In denying the Michigan plaintiffs' motion for injunctive relief, the court concluded:

Plaintiffs are far from likely to succeed in this matter. In fact, this lawsuit seems to be less about achieving the relief Plaintiffs seek—as much of that relief is beyond the power of this Court—and more about the impact of their allegations on People's faith in the democratic process and their trust in our government. Plaintiffs ask this Court to ignore the orderly statutory scheme established to challenge elections and to ignore the will of millions of voters. This, the Court cannot, and will not, do. The People have spoken.

*Id.* at *13. The Michigan action led to sanctions motions being filed against Mr. Wood. The City of Detroit's motion, which is pending, seeks Mr. Wood's disbarment and disqualification, alleging there was no basis in law for plaintiffs' claims and that plaintiffs' expert reports were rife with misstatements and misinformation, which should have been easily discovered by Mr. Wood and his team with *any* due diligence. Ex. V at 17-18.

The district court in Arizona likewise left no doubt that Mr. Wood's lawsuit was unfounded and warranted in its order dismissing the action:

> By any measure, the relief Plaintiffs seek is extraordinary. If granted, millions of Arizonans who exercised their individual right to vote in the 2020 General Election would be utterly disenfranchised. . . . Not only have Plaintiffs failed to provide the Court with factual support for their extraordinary claims, but they have wholly failed to establish that they have standing for the Court to consider them. Allegations that find favor in the public sphere of gossip and innuendo cannot be a substitute for earnest pleadings and procedure in federal court.

*Bowyer*, 2020 WL 7238261, at *1, *16.

*Pro hac vice* admission should be revoked where the court does not have reasonable assurance that an attorney is familiar with and will abide by the FRCP, the Local Rules for the Eastern District of New York, this Court's Individual Rules, the New York RPC, and the customs and practices of this Court. *See Pintur v. Rogic*, No. 16-cv-09696, 2017 WL 5565620, at *6 (S.D.N.Y. Oct. 25, 2017); *see also Erbacci, Cerone, and Moriarty, Ltd. v. U.S.*, 923 F. Supp. 482, 485-86 (S.D.N.Y. 1996) ("[B]efore this Court will admit an attorney to practice *pro hac vice,* this Court must have some reasonable assurance that such attorney is familiar with the Federal Rules of Civil Procedure, the Local Rules . . . , this Court's Individual Rules, and the customs and practices of this Court.").

Mr. Wood has shown that he either cannot or will not comply with his professional obligations. Indeed, in the January 11 conference before this Court, he defended his actions, falsely claiming that there was ample evidence of fraud to support the allegations universally rejected by multiple courts. Ex. K at 11 ("[The election fraud litigation is] based on a wealth of material and admissible evidence."). This baseless contention has been rejected by approximately 60 courts throughout the country. *See* Reichman Decl. ¶ 26, n.23.

### 3. Mr. Wood Is Responsible and Answerable for the False Filings

During the January 11 conference with this Court, Mr. Wood stated:

> What I have done with Sidney Powell is, she asked me to sign on to two or three lawsuits where she was the lead counsel, in anticipation that there may be a need for a trial lawyer. I didn't draft the lawsuits. There were some typographical errors and things done in some of them that upset a judge in Wisconsin, I believe, maybe Michigan. But if you had a full hearing on what happened there, I didn't have anything to do with that, other than I did agree to sign on to help Sidney.

Ex. K at 9-10.

But Mr. Wood's claim that it was all the fault of Sidney Powell, his co-counsel, does not shelter him from responsibility for the meritless and frivolous filings. *See Aird v. Ford Motor Co.*, 86 F.3d 216, 223 (D.C. Cir. 1996) (finding that a lawyer was jointly and severally liable for sanctions while he was a counsel of record, even if he did not participate in the offending activities and even though he actively sought to remove his name from some of the offending filings, and subsequently withdrew from case); *Raylon LLC v. Complus Data Innovations, Co.*, Nos. 6:09-CV-355, 6:09-CV-356, 6:09-CV-357, 2015 WL 11121530, at *8-9 (E.D. Tex. May 4, 2015) (finding that an attorney who was not involved in the drafting of the pleadings, but benefited from the representation, is liable under Rule 11); *see also* Fed. R. Civ. P. 11, Advisory Committee Note to 1993 Amendment (stating multiple attorneys can be held accountable for the actions of their co-counsel if they had a part in "causing the violation").

### E. Mr. Wood's False Statements to This Court

RPC 3.3 provides that a "lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer. . . ."

In the course of one short conference, Mr. Wood made numerous false statements to the Court. Space limitations preclude us from addressing all of his false contentions, but three

statements go to the heart of this motion in particular, and are demonstrably false as shown by irrefutable documentary evidence.[3]

**"I didn't call for the people to go up there and meet, I didn't call for anybody to go to the Capitol."** Ex. K at 9.

Mr. Wood did, in fact, "call for" his supporters to storm and occupy the United States Capitol. *Id.* On the morning of January 6, Mr. Wood posted to his 1.1 million Twitter followers that "[t]he time ha[d] come . . . to take back our country . . . to fight for our freedom." Reichman Decl. ¶ 10. He wrote those words alongside an image stating that it was "1776 Again." *Id.* During the insurrection, as the mob was storming the Capitol building, Mr. Wood tweeted to his followers that they should follow the advice of Bill White to "enter the US Capitol Building . . . enter both houses . . . fight for us [and] . . . fight for Trump. . . ." *Id.* ¶ 13.

**"So there's been no finding by any court that the evidence of election fraud is lacking. In fact, if they discussed it, they would have to say it was literally conclusive that there was fraud."** Ex. K at 11.

As set forth above, several courts specifically found "that the evidence of election fraud is lacking," *id.*, in the election lawsuits filed by Mr. Wood. For example, in Arizona, the district court, in dismissing the complaint, declared that Mr. Wood had failed to provide any factual support for the claims:

> Not only have Plaintiffs failed to provide the Court with factual support for their extraordinary claims, but they have wholly failed to establish that they have standing for the Court to consider them. Allegations that find favor in the public sphere of gossip and innuendo cannot be a substitute for earnest pleadings and procedure in federal court. They most certainly cannot be the basis for upending

---

[3] As shown in Defendant's motion to strike the amended complaint, there are numerous material allegations in that complaint which are also belied by documentary evidence. That evidence refutes Plaintiff's allegations that the Defendant was responsible for the public learning about Plaintiff's conduct and disclosing Plaintiff's home and business information. These allegations go to the heart of Plaintiff's liability and damage claims and are the putative rationale for suing the Defendant and not the countless others who made the same accusations against Plaintiff including well-known political commentators, entertainers, actors, and musical artists. A quick Google search by Mr. Wood would have revealed that numerous material allegations in the amended complaint are false. *See* Dkt. 18. We are not, however, basing this motion on those false allegations.

Arizona's 2020 General Election. The Court is left with no alternative but to dismiss this matter in its entirety.

*Bowyer*, 2020 WL 7238261 at *16.[4]

In the Michigan case, the district court denied the plaintiffs' motion for injunctive relief in all respects,[5] and noted that the plaintiffs had not presented any evidence to support the allegations of fraud, but instead relied on nothing more than "speculation and conjecture":

> Plaintiffs' equal protection claim is not supported by any allegation that Defendants' alleged schemes caused votes for President Trump to be changed to votes for Vice President Biden. . . . [T]he closest Plaintiffs get to alleging that physical ballots were altered in such a way is the following statement in an election challenger's sworn affidavit: "I believe some of these workers were changing votes that had been cast for Donald Trump and other Republican candidates." But of course, "[a] belief is not evidence" and falls far short of what is required to obtain any relief, much less the extraordinary relief Plaintiffs request. . . . With nothing but speculation and conjecture that votes for President Trump were destroyed, discarded or switched to votes for Vice President Biden, Plaintiffs' equal protection claim fails.

*King*, 2020 WL 7134198 *12-13 (internal citations omitted).

**"I have never advocated that anyone should break the law. I've advocated for people to follow the law."** Ex. K at 15.

As set forth above, Mr. Wood encouraged the conduct of individuals who committed federal offenses by breaking into the Capitol to unseat our duly elected representatives and prevent the counting of electoral college votes and the peaceful transfer of power. As of the date of this brief, over 100 people have been arrested and so charged with the FBI investigating hundreds

---

[4] Similarly, an Arizona state court found after a trial in another election case that there was "no misconduct, no fraud, and no effect on the outcome of the election," *Ward v. Jackson*, CV 2020-015285, at 8 (Maricopa Co. Supr. Ct. Dec. 4, 2020), https://www.clerkofcourt.maricopa.gov/Home/ShowDocument?id=1930, in a ruling that was unanimously affirmed by an *en banc* panel of the Arizona Supreme Court, No. CV-20-0343 (Az. Dec. 8, 2020), https://embed.documentcloud.org/documents/20421492-arizona-supreme-cv-20-0343-decision-order/?embed=1&title=1.

[5] The Court in the Michigan case did not have an opportunity to rule on the Defendants' motion to dismiss because the Plaintiffs voluntarily dismissed their complaint on January 14, 2021 while that motion was pending.

more.  Ex. Z at 1.  By calling for the execution of the Vice President, Mr. Wood is also urging his followers to break the law.

An attorney's lack of candor is a sufficient ground, standing alone, to revoke his *pro hac vice* admission.  *Pintur*, 2017 WL 5565620, at *6.  Mr. Wood's false statements to this Court should deprive him of the privilege of practicing before it.

### III.  CONCLUSION

The Court should grant Defendant's motion to revoke the *pro hac vice* admission of L. Lin Wood.

Dated: Montclair, New Jersey
        January 25, 2021

**JOHNREICHMANLAW LLC**

By:   *s/  John Reichman*
John H. Reichman
David Yeger, *Of Counsel*
56 Oakwood Avenue
Montclair, New Jersey 07043
(917) 626-8025
john@johnreichmanlaw.com
david@yegeresq.com

*-and-*

**GIBSON, DUNN & CRUTCHER LLP**
Theodore J. Boutrous Jr.
Marcellus A. McRae
Marissa Moshell
333 S. Grand Avenue
Los Angeles, California 90071
(213) 229-7000
TBoutrous@gibsondunn.com
MMcRae@gibsondunn.com
MMoshell@gibsondunn.com

*Attorneys for Defendant Joy Reid*