JOHN H. REICHMAN
john@johnreichmanlaw.com
917.626.8025

March 2, 2021

**VIA ECF**
Hon. Vera M. Scanlon, U.S.M.J.
United States District Court – E.D.N.Y.
225 Cadman Plaza East, 1214 South
Brooklyn, NY 11201

Re: *Roslyn La Liberte v Reid;* 18cv5398 (DLI) (VMS)

Your Honor:

We represent Defendant Joy Reid in the above-entitled action and write with respect to Plaintiff Roslyn La Liberte's failure to provide complete responses to the overwhelming majority of Ms. Reid's interrogatories and requests for production of documents ("RFPs"). The Court should order Plaintiff to fully respond to Ms. Reid's interrogatories 2-4, 7-8, 10, 12-14, 17, 18 and RFPs 1-15, 17-22, 24-29, 31-37, 39, 41, and 43. It should also order that, to the extent evidence is responsive to Ms. Reid's discovery demands but is not disclosed, Plaintiff will be precluded from introducing such evidence at trial or in relation to any dispositive briefing. Ms. Reid's written discovery and Plaintiff's responses thereto are annexed hereto as **Exhibits A through D.**

Ms. Reid's counsel conferred with Plaintiff's counsel, Lin Wood and David Olasov, in an attempt to resolve the issues set forth herein. The parties were unable to reach a resolution. Plaintiff's position was that, as a "threshold matter," it was necessary to determine which of Ms. Reid's affirmative defenses remained in the case as a result of the Second Circuit's July 15, 2020 decision (the "Decision") before any discussion could take place. As shown below, this position is disingenuous; each of Ms. Reid's requests are indisputably relevant to Plaintiff's liability and damage claims and there is nothing in the Decision limiting the discovery Ms. Reid seeks. The Decision found that Plaintiff adequately pled her claim under the Rule 12(b)(6) motion to dismiss liberal pleading standard, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *La Liberte v. Reid*, 966 F.3d 79, 85 (2d Cir. 2020). The Second Circuit did not, of course, decide this case in Plaintiff's favor—it must still be litigated. Indeed, the Second Circuit stated that Plaintiff's claim "should proceed to discovery." *Id.* at 94.

**Discovery Regarding Plaintiff's Special Damages**

Plaintiff has failed to fully answer RFPs 26-28 and interrogatories 3 and 4, which seek documents and information concerning her claims that Ms. Reid's posts caused eight customers to stop doing business with RC Design Construction Associates, Inc. ("RC") and the loss of sales commissions. This issue is also the subject of Ms. Reid's pending motion to compel regarding Plaintiff's initial disclosures.

Plaintiff's response to each of the aforementioned requests is, "upon the determination of the pending motion to compel plaintiff will produce documents sufficient to show and quantify lost profits to RC Construction Associates, Inc. and her damage flowing from defendant's actions." Ex. B at 11. There are multiple problems with this response. Ms. Reid is entitled to documents such as RC's financial statements, sales reports, and lost commissions, including the names of lost customers, to test whether business was in fact lost because of Ms. Reid's actions. Numerous

individuals, including many with large public followings, posted the photograph of Plaintiff at the Simi Valley city council meeting ("Council Meeting") before Ms. Reid did. Further, several people revealed Plaintiff's business, phone number, and address before Ms. Reid posted. Dkt. 18 ¶¶ 20-34. The identity of the supposed lost customers is critical to determining whether they stopped doing business with Plaintiff and did so because of Ms. Reid's posts. This is a fundamental aspect of Plaintiff's claim; yet, she is barring Ms. Reid from discovering anything about it.

Plaintiff's February 12, 2021 letter (Dkt. 69), attempting to justify its deficient initial disclosures, also shows Plaintiff's lack of good faith. Plaintiff argues that revealing the names of former customers would cause RC to lose business, and her solution to this non-existent problem was to provide information about Plaintiff's lost customers only after Plaintiff was deposed, thereby denying Defendant any meaningful opportunity to examine Plaintiff about her putative damages. In the same vein, after Defendant drafted a confidentiality order at Plaintiff's insistence, *Plaintiff's counsel then refused to negotiate or enter into one.*

Finally, Plaintiff's reason for refusing to provide information about damages—that the Decision held "Plaintiff had no obligation to plead or establish special damages," and because her damages are "presumed as a matter of law"—directly conflicts with Supreme Court precedent. Ex. D at 5; Dkt. 69 at 2. In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), the Supreme Court flatly rejected Plaintiff's position and found the First Amendment prohibits presumed damages in defamation cases where the plaintiff is a private figure and does not prove actual malice. The Court held that "States may not permit recovery of presumed or punitive damages . . . when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth." *Id.* at 349 (stating it is "necessary to restrict defamation plaintiffs who do not prove [actual malice] to compensation for *actual injury* (emphasis added)).

**Plaintiff's Political Activities are Relevant to Numerous Issues in the Action**

Ms. Reid's RFPs 1-4, 24, 31, 35-37 and 39 seek documents and information concerning protests, council meetings and other public events Plaintiff attended; hate messages she received with respect to those events; communications where Plaintiff was accused of racist conduct; positions she took and communications she had concerning immigration issues; communications with the Federation for American Immigration Reform ("FAIR"); Plaintiff's contacts with the media; and Plaintiff's social media posts concerning public issues. Ms. Reid's interrogatories 2, 4, and 17 ask for the events Plaintiff attended, her social media posts, and media contacts.

Plaintiff has refused to provide the requested documents and information, uniformly asserting that each request is irrelevant, fails the test of proportionality and "is not reasonably calculated to lead to the discovery of admissible evidence" because:

> [Plaintiff's] status as a private citizen has been determined . . . by the Court of Appeals . . . . Furthermore, a direction for her to answer this RFP would have the effect of burdening her participation as a private citizen in matters of public interest. . . . La Liberte objects that an order . . . requiring a response . . . would constitute "state action" . . . improperly infringing upon her First Amendment rights.

Ex. B at 2. There is no such thing as a state action defense to discovery. To the extent Plaintiff claims her responses are protected by the First Amendment, no "'absolute' privilege exists protecting documents from discovery under the First Amendment. . . ." *P. & B. Marina, Ltd. P'ship v. Logrande*, 136 F.R.D. 50, 60-62 (E.D.N.Y. 1991) (denying a claim that documents

should be withheld to protect the First Amendment right to petition). In particular, where the objection is based on a party's associational rights, "the association privilege cannot be used to circumvent general and legitimate discovery where the specter of intimidation and reprisal is not present." *Sherwin-Williams Co. v. Spitzer*, No. 1:04-cv-185, 2005 WL 2128938, at *5 (N.D.N.Y Aug. 24, 2005) (finding plaintiffs did not make a showing of a reasonable probability of a "chill or threat" to organization members). Here, Plaintiff filed this lawsuit and put her reputation and views at issue—she opened the door. "[O]nce a party initiates . . . an action, '[she] cannot realistically hope to pursue the suit in a risk-free atmosphere.'" *Id.*

"A plaintiff places [her] reputation at issue when . . . she sues for defamation if only because a jury may award damages for injury to reputation." *Rulon v. City of Colton*, No. G050697, 2015 WL 1609018, *4 (Cal. Ct. App. Apr. 10 2015). Absent evidence showing damage to reputation, a jury could award nominal damages of $1. *See, e.g.*, *Core Wealth Mgmt., LLC v. Heller*, No. B199366, 2010 WL 1453068 (Cal. Ct. App. Apr. 13, 2010); *see also Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016).

All of Ms. Reid's RFPs and interrogatories are relevant to the following allegations, among others, in her first amended complaint ("FAC"): Ms. Reid damaged her reputation; Ms. Reid caused Plaintiff per se and special damages; Plaintiff has lived a private life outside of the public eye; Plaintiff is not a bigoted racist, and the racial slurs made at the Council Meeting do not reflect Plaintiff or her views. *See* FAC ¶¶ 47, 69, 75, 86. For example, despite Plaintiff's obstruction of discovery, Ms. Reid uncovered evidence of other events that could have caused Plaintiff the reputational harm she attributes to Ms. Reid. On February 25, 2017, more than a year before the Council Meeting, Plaintiff punched a teenager at a pro-Trump rally in Hollywood, California. This violent encounter was captured on video and posted online.[1]

Indeed, it appears that Plaintiff regularly and publicly confronts vulnerable teenagers on divisive matters of public concern. We now know, again without the benefit of discovery, of three interactions Plaintiff had with vulnerable teenagers: the video of plaintiff punching a teenager at the Hollywood rally, a 2018 photograph of Plaintiff arguing with another teenager published in *The Washington Post*, *see* **Exhibit E**, and the photograph published in the *Ventura County Star* showing Plaintiff screaming at a 14-year-old at the Council Meeting, *see* **Exhibit F**. Ms. Reid is entitled to pursue whether Plaintiff's purported damages were caused by actions that occurred before Ms. Reid's social media posts.

Finally, while the Decision found that Plaintiff did not need to *plead* actual malice because she did not appear to be a limited purpose public figure, it does not preclude Ms. Reid from discovering and presenting other evidence, such as the Hollywood video, showing that Plaintiff in fact meets the limited purpose public figure test. *See La Liberte*, 966 F.3d at 92 (noting the district court erred by requiring Plaintiff to "*allege*" actual malice (emphasis added)).

**Plaintiff's Selective and Outright Refusal to Provide Relevant Documents and Information**

Plaintiff has inexplicably refused to provide any documents it has regarding Ms. Reid (RFP

---

[1] *Fists Fly As Trump Supporters Rally for Boycott of Oscars Ceremony*, Ruptly (Feb. 25, 2017) https://www.ruptly.tv/en/videos/20170225-067-USA--Fists-fly-as-Trump-supporters-rally-for-boycott-of-Oscars-ceremony?search_key=e41d36e9-c98f-4e21-8cde-af042e041269 (last accessed on February 23, 2021). According to Wikipedia, Ruptly is a sister agency of RT, Russian TV, and in 2020 had 1.48 million subscribers and reached up to 3,000,000 viewers.

29).  In response to numerous document requests, Plaintiff only agreed to produce selective documents and not others called for.  For example, while RFPs 6-8 and 13 call for all documents concerning the hate messages Plaintiff received, Plaintiff only agreed to produce the hate messages themselves.  Plaintiff's communications *about* the hate messages are also highly relevant.  Similarly, Plaintiff refuses to fully respond to RFP 5 (concerning Plaintiff's allegation that the photograph at the heart of this action was taken out of context); RFP 17-21 (concerning Plaintiff's communications with third parties including key witnesses in the case); RFP 10 (concerning Plaintiff's allegation that the racial slurs do not reflect Plaintiff or her views); RFPs 11-12 and 14 (concerning Plaintiff's allegations that Ms. Reid performed no investigation and had no source for her posts and knew of their falsity); RFP 22 (concerning communications that Plaintiff and her family had with Ms. Reid); RFPs 33-34 (concerning communications with Arthur Schaper, the head of FAIR, and Genevieve Peters, who attended the Council Meeting, which likely detail, among other comments, whether the statements in Ms. Reid's posts reflect Plaintiff or her views, and what Plaintiff said at the Council Meeting).

Plaintiff also refused to adequately answer numerous interrogatories.  For example, interrogatory 14 asks Plaintiff to describe each communication she had with persons who attended the Council Meeting before, during, and after the meeting. Plaintiff referenced a single text message she had about the meeting, but then failed to state whether other documents exist or describe the communications she (undoubtedly) had.  Plaintiff also failed to fully answer interrogatories 8 (the basis for Plaintiff's allegation that the racial slurs do not reflect Plaintiff or her views); 10 (identifying documents showing that Ms. Reid had knowledge of the falsity of her posts); and 12 (communications Plaintiff's daughter had with the police).  Plaintiff also refused to answer in their entirety interrogatories 13 (the basis for the allegation that Ms. Reid was trying to advance her career and political agenda) and 18 (communications with Fox 11 in Los Angeles).

**Refusal to Provide Evidence on How Objective Readers Interpreted Ms. Reid's Posts**

Plaintiff's FAC alleges that "objective readers interpreted Reid's retweet as accusing La Liberte of being one of those who screamed racial obscenities at a minor during the City Council Meeting."  FAC ¶ 45. Ms. Reid's interrogatory 7 and RFP 9 ask Plaintiff to identify facts and documents to support this allegation, but Plaintiff refuses to do so, arguing these inquiries are barred by the Decision.  The Decision's finding that one of Ms. Reid's posts was not nonactionable opinion does not mean Ms. Reid is foreclosed from probing the manner in which the public understood it.  "Whether a challenged statement 'declares or implies a provable false assertion of fact is a question of law for the court to decide, unless the statement is susceptible of both an innocent and a libelous meaning, in which case the jury must decide how the statement was understood.'"  *Overhill Farms v. Lopez*, 190 Cal. App. 4th 1248, 1261 (Cal. Ct. App. 2010).

The Court should order Plaintiff to fully respond to Ms. Reid's interrogatories 2-4, 7-8, 10, 12-14, 17, 18 and RFPs 1-15, 17-22, 24-29, 31-37, 39, 41, and 43.

Respectfully submitted,

*/s/ John H. Reichman*

John H. Reichman

cc:      All Counsel on ECF