JOHN H. REICHMAN
john@johnreichmanlaw.com
917.626.8025

June 9, 2021

**VIA ECF**
Hon. James R. Cho U.S.M.J.
United States District Court – EDNY
225 Cadman Plaza East, 1214 South
Brooklyn, NY 11201

Re: *Roslyn La Liberte v Reid; 18cv5398 (DLI) (JRC)*

Your Honor,

      We represent Defendant Joy Reid in the above-referenced action. We are writing to address Plaintiff Roslyn La Liberte's non-compliance with the Court's May 13, 2021 conference order (the "Order"), and the continued inadequacy of Plaintiff's initial disclosures. This is the third court order Plaintiff has failed to comply with regarding her initial disclosures. *See* Tr. of Jan. 11, 2021 Conference at 20; Tr. of March 24, 2021 Conference at 22–23; Minute Order for May 13, 2021 Telephonic Discovery Conference (Dkt. 90). We also address below other open discovery issues and yesterday's letter filed by Plaintiff's counsel (Dkt. 94, 96). A conference in the case is scheduled for this Friday, June 11, 2021, at 1:00 p.m.

      In response to Ms. Reid's prior motion to compel, the Order required Plaintiff to provide supplemental documents and certification by no later than May 27, 2021 ("By 5/27/2021, plaintiff *shall* produce documents discussed on the record relating to damages set forth in plaintiff's initial disclosures . . . or otherwise certify that no additional responsive documents exist." (emphasis added)). Ms. Reid did not receive the documents until the evening of June 2, 2021 and what she received was simply a document dump of almost wholly irrelevant information. Plaintiff's certification, received the same day, also was not close to being in compliance with the Order.

      Three years into the case, Plaintiff has provided no cogent explanation of the damages she is seeking or any documents that support them. Accordingly, at the June 11 conference Ms. Reid will ask for the Court to enter the attached order requiring Plaintiff to provide the missing documents and information or certify that they do not exist. Ms. Reid will also request that the Court lift its temporary hold on her reaching out to Plaintiff's former customers, as it seems there is simply no other way for Ms. Reid to get the information she seeks, including from Plaintiff herself.

### Plaintiff's Inadequate Initial Disclosures

      As detailed in our May 11, 2021 letter to the Court, Plaintiff has repeatedly failed to provide documents and information regarding her purported damages in her initial disclosures in violation of Rule 26 of the Federal Rules of Civil Procedure and multiple Court orders.

Plaintiff belatedly served her initial disclosures on December 14, 2020. As set forth in our January 7, 2021 letter to the Court (Dkt. 58), those disclosures did not comply with Rule 26(a) or this Court's Initial Conference Order. The disclosure alleged that Plaintiff suffered $1,043,114.69 in damages and that valuable business assets were destroyed as a result of Ms. Reid's social media posts. Plaintiff did not disclose how that amount was calculated or identify the business assets that were allegedly destroyed. Plaintiff also failed to provide or identify any documents supporting her damage claims in breach of Rule 26(a)(ii).

At a January 11, 2021 conference, the Court (Scanlon, M.J.) ordered Plaintiff to provide a revised, complete set of initial disclosures by January 29, 2021. *See* Tr. at 20 ("By the 29th of January, a revised, complete set of the initial disclosures [must be served]."). Plaintiff's revised initial disclosures were grossly inadequate and not in compliance with Rule 26. The revised disclosures state that eight customers of Plaintiff's construction business allegedly stopped or reduced business with Plaintiff's companies and that Plaintiff lost sale commissions of $177,767.42 as a result of Ms. Reid's social media posts, which were made in June and July 2018. Plaintiff, however, failed to identify the persons or entities who supposedly would have paid sales commissions, or produce or identify any documents that support her lost profits and commissions claims.

On February 5, 2021, Ms. Reid wrote to the Court regarding Plaintiff's still inadequate initial disclosures. (Dkt. 65). At a March 24, 2021 conference, the Court stated that Plaintiff had still not satisfied "the most basic part of" Rule 26, which should "have been done a while ago." (Dkt. 76, Tr. 19-20). On March 31, 2021, the Court entered a second order, which required Plaintiff to revise her initial disclosures for a second time.

On April 16, 2021, Plaintiff amended and supplemented her initial disclosures, but they once again did not come close to complying with Rule 26 or the Court's orders. Plaintiff finally identified the eight customers whom she contends her construction company would have done business with if not for Ms. Reid's posts. She also provided a specific dollar amount of the business she supposedly lost from each customer, which clearly implied there were specific projects Plaintiff lost as a result of Ms. Reid's posts.

However, Plaintiff failed to provide any information or documents relating to these purported lost projects, or relating to any ongoing relationship she claims to have with the customers she identified. For each customer, Plaintiff should have produced: (i) documentation, such as emails, proposals or proposed contracts, showing the projects Plaintiff reasonably anticipated doing with each customer in or around June/July 2018 when Ms. Reid's posts were published; (ii) documents showing that the proposals did not go forward; and (iii) documents showing the reason why those projects did not go forward (collectively, "Project Documents"). None of the documents Plaintiff provided – all of which are from several years prior to 2018 and relate exclusively to business/projects from years earlier – remotely support her claim for lost profits arising from Ms. Reid's 2018 posts.

Additionally, Plaintiff is apparently contending she was a regional sales agent for Charterhouse, that she was terminated because of Ms. Reid's posts, and that she incurred a very

specific amount, $177,767.42, in lost commissions. Plaintiff produced, in totality, a one-page document purporting to support this claim, which is an email showing only that Plaintiff was terminated by Charterhouse (without an explanation as to why).

**The Order**

At the May 13, 2021 conference, the Court issued the following Order in response to Ms. Reid's motion to compel Plaintiff to comply with her Rule 26 obligations:

> The Court addressed defendant's ongoing concerns regarding plaintiff's initial disclosures (DE [87]). By 5/27/2021, plaintiff shall produce documents discussed on the record relating to damages set forth in plaintiff's initial disclosures, propose a deadline for their production, if not already produced, or otherwise certify that no additional responsive documents exist.

**Plaintiff's Failure to Comply with the Order**

Pursuant to the Court's Order at the May 13, 2021 conference, Ms. Reid wrote to Plaintiff's counsel identifying the additional initial disclosure documents she expected to receive on or before May 28, 2021. These included:

> 1. All communications Plaintiff or her company had with the eight former customers listed in Exhibit A of [her] initial disclosures.
> 2. Documents -- such as emails, contracts, proposals -- identifying the projects or work Plaintiff claims were lost as a result of Ms. Reid's social media posts as well as documents relating to why the projects or work did not go forward.
> 3. Any contract Plaintiff had with Charterhouse.
> 4. Documents showing the commissions, revenue and/or profits, including but not limited to profit and loss statements, Plaintiff earned from Charthouse prior to June 29, 2018.
> 5. Documents sufficient to show potential Charterhouse projects sales Plaintiff lost in 2018 as well as documents relating to why Plaintiff lost those sales.

Ms. Reid also stated in her letter to Plaintiff's counsel, as she had stated previously, that she was *not* asking for, as part of Plaintiff's initial disclosures, backup documents for projects that were completed in the 2012-2015 period, as they would have little or no relationship to Plaintiff's claims of lost sales/commissions beginning in 2018. Ms. Reid also noted that Plaintiff was required to provide a certification if any of the requested documents do not exist and that she should identify the customers with which she was still doing business, if any. As to the latter, Plaintiff has made contradictory statements about whether the former customers are, in fact, former customers. When asked by the Court which of the former customers Plaintiff was still doing

business with, Plaintiff did not answer. (A copy of Ms. Reid's May 20, 2021 letter is annexed hereto as **Exhibit A**. Plaintiff's response is annexed hereto as **Exhibit B**).

On June 2, 2021, Ms. Reid received Plaintiff's 9,000 page document dump. Approximately 99% of the production consisted of documents concerning projects Plaintiff's company purportedly completed between 2013 to 2017, such as blueprints for those projects, none of which are remotely supportive of the future profits she claims she lost as a result of social media posts that were made in June/July 2018. As for Charterhouse, there were also no documents identifying any specific projects or sales Plaintiff lost, explaining the basis for her termination in 2018, or showing the projects she earned commissions on before 2018 and how those commissions were calculated.

The certification Plaintiff produced also violated the letter and spirit of the Order. It merely says that the documents produced are the ones that Plaintiff will rely on without certifying whether other responsive documents exist. (A copy of the certification is annexed hereto as **Exhibit C**).

Plaintiff remains in violation of Rule 26 and *three* Court orders. Plaintiff's lost damage and commission claims are unsustainable if, as is currently the case, she cannot identify any lost projects, cannot show she was even doing business with particular customers in 2018, and cannot provide evidence of any change in the relationship she had with these customers as a result of Ms. Reid's posts. As set forth in the draft order, annexed hereto as **Exhibit D**, the Court should, once again, order Plaintiff to produce the Project Documents and Charterhouse Documents and, if they do not exist, provide an affidavit that no such documents exist on a customer-by-customer basis and revise the narrative portion of her Initial Disclosures to explain how any of the amounts of the lost profits Plaintiff claims were calculated. Indeed, Plaintiff's continued failure – over the past six months, and despite several Court orders – to comply with her most basic obligations under Rule 26(a)(1) is grounds for dismissing this action under Rule 41(b), and the Court has the inherent authority to *sua sponte* dismiss the action for dilatory conduct such as Plaintiff's. *See Link v. Wabash R. Co.*, 370 U.S. 626, 630-631 (1962) (affirming sua sponte dismissal of action without prior notice and noting that "[t]he authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"); *Myvett v. Rosato*, No. 03 civ. 2379, 2004 WL 1354254 (S.D.N.Y. June 16, 2004) (recommending dismissal for failure to prosecute and failure to comply with repeated court orders regarding discovery); *Miltope Corp. v. Hartford Cas. Ins. Co.*, 163 F.R.D. 191 (S.D.N.Y. 1995) (in addition to the authority granted by the Federal Rules of Civil Procedure, "the Court has the inherent power to impose sanctions" for discovery violations).

### Plaintiff's Objections to Defendant's Document Requests

At the Conference, the Court asked Ms. Reid to revise her discovery requests to make them narrower and she did so. A copy of Defendant's revised requests, which were sent to Plaintiff on May 26, 2021, is annexed hereto as **Exhibit E**. Ms. Reid has not received a response to those requests. Ms. Reid believes the amended requests are sufficiently tailored and go directly to what Plaintiff's reputation was with respect to alleged racism or nativism before Ms. Reid's posts and

how it changed, if at all, afterwards. Ms. Reid thus respectfully requests that the Court overrule any objections to her modified requests.

## Defendant's Objections to Plaintiff's Document Requests

Ms. Reid objected outright to four of Plaintiff's twenty-five document requests. In the spirit of cooperation and compromise, Ms. Reid withdrew her objection to Request No. 25, but maintains her objections to Requests 20 and 23, which call for documents regarding Ms. Reid's so-called hostility to Trump and Trump supporters for the following reasons: (i) the requests seek irrelevant information as Ms. Reid's political beliefs are irrelevant with respect to proving malice or any other issue in the case, regardless of whether or not Plaintiff is ultimately determined to be a limited purpose public figure or private figure; (ii) the requests are vague and overbroad; (iii) no document discovery is needed on this issue given Ms. Reid's answer to paragraph 7 of the amended complaint with respect to her views on Trump's policies; and (iv) the requests would be extremely burdensome and time consuming to comply with as they would require collecting and reviewing what could be hundreds of thousands of irrelevant emails where Trump is mentioned (such as email alerts about his schedule for the day, copies of public remarks, etc.).

The recent decision in *Dershowitz v. Cable News Network, Inc.*, Case No. 20-61872 (S.D. Fla. May 24, 2021), strongly supports Ms. Reid's position. In ruling on CNN's motion to dismiss Dershowitz's defamation claim, the court ruled that CNN's alleged political animus cannot be the basis for defamation claim, as it would chill the defendant's First Amendment rights, and thus took the "drastic" remedy of striking those portions of Dershowitz's complaint:

> CNN argues that Dershowitz' "claims of disinterested political malevolence are insufficient" to establish actual malice. The Court agrees and, further, concludes that these allegations should be stricken as immaterial and impertinent. Fed. R. Civ. P. 12(f). In paragraph 14 of the Complaint, Dershowitz alleges:
>
>> Professor Dershowitz was one of the most revered and celebrated legal minds of the past half century. His reputation relating to his expertise in criminal and constitutional matters was one that lawyers would only dream about attaining in their lifetimes. However, Professor Dershowitz appears to have made one mistake. He chose to defend the President of the United States and defend the U.S. Constitution at a moment in time where CNN has decided that doing so is not permitted. For this, CNN set out to punish him and destroy his credibility and reputation, and unfortunately, succeeded.
>
> The Supreme Court has stated that "[a defendant's] motive in publishing a story . . . cannot provide a sufficient basis for finding

> actual malice." *Harte-Hanks Communications., Inc. v. Connaughton*, 491 U.S. 657, 665 (1989). Indeed, a defamation claim cannot rest on the argument that "erroneous communications were motivated by differences in political opinions. Doing so would run afoul of the Supreme Court's landmark ruling in *New York Times Co. v. Sullivan*. *See* 376 U.S. at 271–72 (noting that errors are inevitable when there is free debate and that they too must be protected to give breathing room to those exercising their freedom of expression)." *Arpaio v. Robillard*, 459 F. Supp. 3d 62, 66 (D.D.C. 2020).
>
> Paragraph 14 of Dershowitz' Complaint alleges that CNN was motivated by political animus. As Judge Lamberth noted in *Arpaio*, "Allegations of 'leftist enmity' cannot trump the guarantees of the First Amendment." *Id.* "Striking a pleading or a portion thereof is a drastic remedy to be resorted to only when required for the purposes of justice." *Sanchez v. Selective Ins. Co. of the Southeast*, 2019 WL 79282, at *2 (S.D. Fla. Jan. 2, 2019) (quotation omitted). Nevertheless, the allegations in paragraph 14 are immaterial to the claim and are an impertinent salvo that do not belong in this case.

*Dershowitz* at pp. 21-22.

Defendant continues to object to discovery regarding any litigation holds. Litigation hold letters are generally not discoverable and there is no reason to make an exception here absent a particularized showing. "[G]enerally litigation hold letters are not discoverable, particularly when a party has made an adequate showing that the material is protected by the attorney-client privilege or the work product doctrine. . . ." *United Illuminating Co. v. Whiting-Turner Contracting Co.*, 2020 WL 8611045 (D. Conn. Dec. 18, 2020).

### Plaintiff's June 8, 2021 Letter

Most of the letter filed yesterday by Plaintiff's counsel is an irrelevant and improper discussion about the merits of Plaintiff's claim. Ms. Reid's silence with respect to any of Plaintiff's musings should not be construed as an acquiescence or waiver to anything in Plaintiff's letter.

As shown in detail in Ms. Reid's motion to dismiss and the affidavit submitted in support thereof, Dkt. 17, 18, numerous other persons and groups, including well known personalities with millions of social media followers, accused Plaintiff of engaging in racist conduct before Ms. Reid posted about Plaintiff *at all*. Plaintiff has the burden to demonstrate that Ms. Reid, and not the myriad of other persons who accused Plaintiff of racist conduct, caused Plaintiff the harm she is alleging. To the extent any of Plaintiff's arguments regarding social media have any relevance, they apply with equal force to all of the posts about Plaintiff, not just those by Ms. Reid.

  Plaintiff also improperly characterizes Ms. Reid's core objection to the stipulation Plaintiff proposed. At the May 13, 2021 conference, Ms. Reid's counsel stated that Ms. Reid has an "opposition to Mr. Trump's *policies* and those who support [*those policies*]." Tr. at 75 (emphases added). Ms. Reid never stated that she has a general opposition to people who support Trump and Plaintiff continually fails to recognize that distinction, including by sending a proposed stipulation that was inflammatory, inappropriate, and flatly wrong. In any event, Ms. Reid's rejection of the proposed stipulation does not provide Plaintiff with grounds to reassert her baseless requests for immaterial and prejudicial discovery. *See Dershowitz* at 21-22. Ms. Reid maintains her objections to those requests.

              Respectfully submitted,

              /s/ *John H. Reichman*

              John H. Reichman

cc:  All Counsel on ECF