UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
ROSLYN LA LIBERTE,                              :
                                                :
                              Plaintiff,        :
                                                :        REPORT AND
        -against-                               :        RECOMMENDATION
                                                :
JOY REID,                                       :        No. 18-CV-5398-DLI-JRC
                                                :
                              Defendant.        :
------------------------------------------------------------ x

JAMES R. CHO, United States Magistrate Judge:

On September 25, 2018, plaintiff Roslyn La Liberte ("plaintiff" or "La Liberte")

commenced this defamation action against defendant Joy Reid ("defendant" or "Reid"), a cable

television personality.   *See generally* Compl., Dkt. 1.   On December 14, 2022,[1]  plaintiff

moved for leave to file a Second Amended Complaint adding two new defendants --

NBCUniversal Media, LLC ("NBCUniversal") and MSNBC Cable, LLC ("MSNBC")

(collectively, "NBCU"), Reid's employers.   *See* Letter Motion to Amend ("Mot. to Amend"),

Dkt. 156.   Reid opposes the motion on the grounds that the proposed amendments are untimely,

prejudicial and futile.   *See* Response in Opposition ("Response in Opp."), Dkt. 158.   For the

following reasons, the Court respectfully recommends denying plaintiff's motion to amend.[2]

---

[1] Although plaintiff originally served her motion to amend on December 28, 2021, she withdrew
the motion without prejudice to renewal if settlement discussions were not successful.   *See* Mot.
to Amend at 1, Dkt. 121; Dkt. 147; Order dated July 5, 2022 (granting motion to withdraw
motion to amend without prejudice).   Plaintiff refiled the instant motion on December 14, 2022.
Dkt. 156.

[2] The Second Circuit has stated that a motion to amend is a "nondispositive" matter that can be
determined by a magistrate judge, pursuant to Fed. R. Civ. P. 72(a) and subject to review under the
"clearly erroneous" standard.   *See Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007).
Accordingly, "[c]ourts in this Circuit typically treat motions to amend as non-dispositive pre-trial
motions."   *Lema v. Fitzcon Constr./Ren Corp.*, No. 20-CV-2311, 2022 WL 1321596, at *1 n.1
(E.D.N.Y. May 3, 2022); *see Prosper v. Thomson Reuters Inc.*, No. 18-CV-2890, 2021 WL

## Background

Plaintiff brings this defamation suit in response to two social media posts made about plaintiff by defendant, a reporter and political commentator employed by NBCU, on June 29, 2018 and July 1, 2018, respectively.   *See* Am. Compl. ¶¶ 1, 42, 48, 56, Dkt. 16.   Those posts suggested that plaintiff shouted racial slurs at a fourteen-year-old boy, at a June 25, 2018, Simi Valley, California, City Council meeting regarding California's sanctuary law.   *See id.* ¶¶ 2, 8, 11, 13, 35, 38, 40-42, 45, 48-58.   The June 29, 2018 post showed a photograph attributing racist remarks to plaintiff, and the July 1, 2018 post juxtaposed the same photograph with a photograph of the Little Rock Nine walking past a shouting woman.   *See id.* ¶¶ 44-46, 50.

Plaintiff filed her first Amended Complaint on November 27, 2018.   *See* Am. Compl., Dkt. 16.   On September 30, 2019, the Honorable Dora L. Irizarry granted defendant's motion to dismiss the Amended Complaint in its entirety.   *See* Memorandum and Order, Dkt. 33.   On October 5, 2020, the Second Circuit vacated the dismissal order and remanded the case back to this Court.   *See* Mandate of USCA, Dkt. 43.

At a January 11, 2021 conference, Magistrate Judge Vera M. Scanlon, the magistrate

---

535728, at *1 n.1 (S.D.N.Y. Feb. 11, 2021) (collecting cases).   However, some courts have suggested that a magistrate judge's denial of a motion to amend a complaint should be treated as dispositive, while a grant of the same motion should be treated as non-dispositive.   *See, e.g.*, *Ashford Locke Builders v. GM Contractors Plus Corp.*, No. 17-CV-3439, 2020 WL 6200169, at *1 (E.D.N.Y. Oct. 22, 2020) ("unless the magistrate judge's decision effectively dismisses or precludes a claim, thereby rendering the motion to amend dispositive, motions for leave to amend are subject to review under the 'clearly erroneous or contrary to law' standard of Rule 72(a).").   Other courts have suggested a distinction between denials based on undue delay or prejudice, treated as non-dispositive, and denials based on futility, which are treated as dispositive.   *See Morgan Art Found. Ltd. v. McKenzie*, No. 18-CV-4438, 2021 WL 863264, at *1 n.1 (S.D.N.Y. Jan. 22, 2021).   Out of an abundance of caution, since this Court recommends denying plaintiff's motion on futility grounds, as well as timeliness, this decision is issued as a report and recommendation.   *See Pusey v. Delta Airlines, Inc.*, No. 09-CV-4084, 2011 WL 1215081, at *1 (E.D.N.Y. Mar. 30, 2011) ("A magistrate judge's denial of leave to amend, when premised on futility, is a dispositive decision warranting de novo review of any objection to it.").

judge then-assigned to the case, granted the parties' joint request to set January 29, 2021 as the deadline for seeking amendment of the pleadings and/or joinder of additional parties. *See* Transcript of January 11, 2021 conference ("Tr.") at 21, Dkt. 59; Proposed Scheduling Order, Dkt. 57. At the conference, Judge Scanlon asked the parties, "[i]s there any possibility of joinder or amendment at this stage, given again how long this has been around for?" Tr. at 21. Plaintiff's counsel responded, "[w]e don't think so." *Id.*

On July 22, 2021, the Court granted the parties' request to extend the pretrial discovery schedule, including extending the deadline to amend the pleadings and/or join parties until July 30, 2021, a date proposed by plaintiff. *See* Order dated July 22, 2021; Scheduling Order proposed by plaintiff, Dkt. 102-1.

Plaintiff now seeks to assert claims against two new defendants. Plaintiff argues that her delay in seeking leave to amend is justified because the proposed amendments arise from discovery documents that defendant had earlier resisted producing and recent deposition testimony. Defendant objects to plaintiff's proposed amendments on grounds of timeliness, undue prejudice and futility.

**Discussion**

## I.    Plaintiff Has Failed to Show Good Cause to Add Claims Against NBCU

Plaintiff recognizes, as she must, that where, as here, a court has issued a scheduling order pursuant to Rule 16 of the Federal Rules of Civil Procedure, the court must first address whether the party seeking to amend has shown "good cause" for modifying that scheduling order. *See* Fed. R. Civ. P. 16(b)(4); *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 243-44 (2d Cir. 2007); *accord Gullo v. City of N.Y.*, 540 F. App'x 45, 46-47 (2d Cir. 2013) (affirming denial of untimely motion to amend to name defendant officers). One purpose of Rule 16 is to

3

"offer a measure of certainty in pretrial proceedings, ensuring that 'at some point both the parties and the pleadings will be fixed.'"  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (quoting Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment).

Rule 16 allows a party to obtain a modification of a scheduling order "only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  If the party seeking the amendment satisfies the "good cause" standard of Rule 16, the court then determines whether the movant has also met the liberal standards of Rule 15.[3]  *See Kassner*, 496 F.3d at 244; Fed. R. Civ. P. 15.  Although Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), even under that liberal standard, leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party[,]" *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

It is the movant's burden to establish good cause under Rule 16.  *See Parker*, 204 F.3d at 340; *Lema*, 2022 WL 1321596, at *2.  "Whether good cause exists turns on the diligence of the moving party."  *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotations and

---

[3] Plaintiff's motion to amend also implicates Rules 20(a) and 21 of the Federal Rules of Civil Procedure, which govern the joinder of parties.  "[I]n practical terms there is little difference" among the rules for joinder and amendment since they commit to the court's discretion the decision whether to permit amendment.  *See Lema*, 2022 WL 1321596, at *4 n.3 (quoting *Ferrara v. Smithtown Trucking Co., Inc*., 29 F. Supp. 3d 274, 279 n.3 (E.D.N.Y. 2014)); *see also Zsa Jewels, Inc. v. BMW of N.A., LLC*, No. 15-CV-6519, 2016 WL 11713520, at *3 n.2 (E.D.N.Y. Nov. 17, 2016); *Nielsen Co. (US), LLC v. Success Sys., Inc*., No. 11-CV-2939, 2012 WL 3526625, at *5 (S.D.N.Y. Aug. 13, 2012).  Under Rule 20, the joinder of additional defendants is permitted if plaintiff asserts against them (1) a right to relief arising out of the same series of transactions or occurrences and (2) common questions of law or fact exist as to all defendants.  *See* Fed. R. Civ. P. 20(a)(2).  The court finds that both prongs of the permissive joinder standard are easily satisfied.  First, plaintiff asserts a right to relief against each of the proposed defendants that are logically related and arise from the same series of transactions or occurrences as her claims against Reid.  Second, common questions of law and fact exist between the present amended complaint and the proposed second amended complaint. However, for the reasons set forth herein, the Court recommends denying plaintiff's motion.

citations omitted); *see Kassner*, 496 F.3d at 243.   "A party has not acted diligently where the proposed amendment to the pleading is based on information 'that the party knew, or should have known,' in advance of the deadline sought to be extended."   *Owens v. Centene Corp.*, No. 20-CV-118, 2021 WL 878773, at *3 (E.D.N.Y. Mar. 9, 2021) (quoting *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012)); *see Lema*, 2022 WL 1321596, at *2; *Sokol Holdings, Inc. v. BMB Munai, Inc.*, No. 05-CV-3749, 2009 WL 2524611, at *8 (S.D.N.Y. Aug. 14, 2009) (collecting cases), *report and recommendation adopted*, 2009 WL 3467756 (S.D.N.Y. Oct. 28, 2009).   Thus, if plaintiff had prior knowledge or awareness of the facts underlying her proposed claims, it is well established that she has not demonstrated "good cause" under Rule 16(b).   *See Parker*, 204 F.3d at 340-41.   Although diligence is the primary focus of a "good cause" analysis, a court may, in its discretion, also consider other factors, such as whether "allowing the amendment of the pleading at this stage of the litigation will prejudice defendants."   *Kassner*, 496 F.3d at 244.

In this case, it is undisputed that, in accordance with Rule 16, the Court set a deadline of July 30, 2021 for the parties to amend their pleadings and/or add new parties.   *See* Order dated July 22, 2021.   Consequently, Rule 16 governs this dispute.   The Court need not decide whether plaintiff has satisfied the liberal standard of Rule 15(a) unless plaintiff first establishes "good cause" under Rule 16 for leave to amend for the second time, after the expiration of the court-ordered deadline.   *See Callahan v. Cnty. of Suffolk*, 602 F. Supp. 3d 399, 413 (E.D.N.Y. 2022); *Ahmed v. Astoria Bank*, No. 14-CV-4595, 2015 WL 4394072, at *2 (E.D.N.Y. July 16, 2015).   As discussed below, the Court concludes that plaintiff has not demonstrated good cause.   *See, e.g., Callahan*, 602 F. Supp. 3d at 413 (denying leave to amend to add battery claim under *respondeat superior* theory); *Goldman v. Reddington*, No. 18-CV-3662, 2021 WL 4099462, at

*3, *5 (E.D.N.Y. Sept. 9, 2021) (in defamation case, denying amendment to add counterclaims in the absence of a showing of good cause for delay).

"[W]here the substance of the proposed amendment was known to the movant prior to the deadline for amending pleadings, but the movant nevertheless failed to act, courts have denied leave to amend under Rule 16." *380544 Canada, Inc. v. Aspen Tech., Inc.*, No. 07-CV-1204, 2011 WL 4089876, at *3 (S.D.N.Y. Sept. 14, 2011) (denying amendment where "[t]he Court is unconvinced that Plaintiffs could not have included the substance of the proposed allegations prior to the May 2, 2008 deadline for amendment"); *Oppenheimer & Co. Inc. v. Metal Mgmt., Inc.*, No. 08-CV-3697, 2009 WL 2432729, at *3-*4 (S.D.N.Y. July 31, 2009) (finding no good cause to amend where "the documents more recently produced . . . may further have underscored the potential viability of [movant's] waiver argument, [but] the issue was not new"), *aff'd*, 2010 WL 743793 (S.D.N.Y. Mar. 2, 2010); *Trezza v. NRG Energy, Inc.*, No. 06-CV-11509, 2008 WL 540094, at *6 (S.D.N.Y. Feb. 28, 2008) (denying leave to amend where "nothing in [plaintiff's] motion papers or in any of his other submissions to the Court suggests that he was unaware of the facts necessary to amend his pleading until after the deadline had passed").

Plaintiff's attempts to justify the belated timing of her application are unavailing. Plaintiff contends that the facts underlying her request to join NBCU as a defendant were not fully developed until the end of October 2021, when defendant and NBCU produced (1) Reid's employment agreement with NBCU, and (2) the engagement letters between NBCU and Johnreichmanlaw, LLC ("Reichman"), and between Reid and Gibson, Dunn & Crutcher, LLP ("Gibson, Dunn"). *See* Mot. to Amend at 6, Dkt. 156; *see also* Dkts. 156-14, 156-15, 156-16. According to plaintiff, those documents are dispositive of NBCU's liability for defamation under the doctrine of *respondeat superior* and under contractual indemnities.

First, plaintiff contends that Reid's employment agreement with NBCU demonstrates that NBCU "exercised direction, supervision, and control over Reid's 'personal' social media accounts" and establishes "the scope of matters within Reid's employment in which her employers agreed that they would be liable as her employer and for which they would be bound to protect her."   Mot. to Amend at 5, 6.   Second, plaintiff argues that attorney engagement letters with Reichman and Gibson, Dunn establish that the conduct underlying plaintiff's defamation claims was within the scope of Reid's employment and that Reid's employers would defend and indemnify her.   *Id.* at 6-7.   Plaintiff contends that these documents "conclusively establish all the elements of vicarious liability under the doctrine of *respondeat superior*" sufficient for plaintiff to move for summary judgment against NBCU immediately.   *See id.* at 7, 9.

In addition, plaintiff relies on the October 29, 2021 production of NBCUniversal's Employee Handbook and Policies and Guidelines, which plaintiff claims demonstrate NBCU's business interest in Reid's social media accounts and NBCU's "right to control those accounts and to deal with any problems they give rise to, specifically including defamation."   *Id.* at 9 n.3; Dkt. 161 (attaching handbook and policies); *see also* Response in Opp. at 4 n.2 (referring to October 29, 2021 production).

Plaintiff further points to testimony from two depositions, one of which was taken on January 10, 2022, *after* plaintiff initially filed her motion to amend on December 28, 2021 (Dkt. 121).   At the December 16, 2021 deposition of NBCUniversal employee Lorie Acio ("Acio"), she admitted to participating in the drafting of the apologies posted on Reid's personal social media accounts following the subject posts.   Mot. to Amend at 9 n.3.   At the January 10, 2022 deposition of Phil Griffin ("Griffin"), President of MSNBC during the relevant time period

(taken approximately two weeks *after* plaintiff initially moved to amend on December 28, 2021),

Griffin purportedly testified that Reid demanded that NBCU provide her a defense at NBCU's

cost pursuant to the indemnification provisions of her employment agreement.   *Id.* at 6 n.1.

Here, plaintiff has not convincingly offered an explanation as to why she did not name

NBCU as a defendant at a much earlier stage of these proceedings.   This Court concludes that

plaintiff could have included the substance of the proposed claims prior to the July 30, 2021

deadline to amend the pleadings.

"Under the New York common law doctrine of respondeat superior, 'an employer may be

vicariously liable for the tortious acts of its employees only if those acts were committed in

furtherance of the employer's business and within the scope of employment." *Rosenfeld v.*

*Lenich*, 370 F. Supp. 3d 335, 350 (E.D.N.Y. 2019) (quoting *Sclafani v. PC Richard & Son*, 668

F. Supp. 2d 423, 447 (E.D.N.Y. 2009)); *see Holmes v. Gary Goldberg & Co., Inc.*, 838 N.Y.S.2d

105, 106 (2d Dep't 2007).   "This doctrine applies both to intentional torts and to negligence."

*A.W. by E.W. v. New York Dept. of Educ.*, 519 F. Supp. 3d 128, 139 (E.D.N.Y. 2021).   "An act

is considered to be within the scope of employment if it is performed while the employee is

engaged generally in the business of his [or her] employer, or if his [or her] act may be

reasonably said to be necessary or incident to such employment."   *Holmes*, 838 N.Y.S.2d at 105

(internal quotation marks and citation omitted); *see Judith M. v. Sisters of Charity Hosp.*, 93

N.Y.2d 932, 933 (1999).   "There is no single mechanical test to determine whether at a

particular moment an employee is engaged in the employer's business."   *Rausman v. Baugh*,

682 N.Y.S.2d 42, 43 (2d Dep't 1998).   Whether an employee was acting within the scope of her

employment is a fact-dependent inquiry that is generally decided by a jury.   *See A.W.*, 519 F.

Supp. 3d at 139; *106 N. Broadway, LLC v. Lawrence*, 137 N.Y.S.3d 148, 156-57 (2d Dep't 2020).

Plaintiff claims that her tardiness in seeking to add NBCU as a defendant is due to her counsel's prudence and strict reliance on the evidence. *See* Mot. to Amend at 5 ("Plaintiff could not have moved to add a party until she had sufficient 'factual content' to do so."). However, plaintiff possessed sufficient information from the outset of the case to assert claims against NBCU, even if plaintiff believes that discovery revealed additional evidence to bolster her proposed claims. Plaintiff certainly knew from the commencement of the action that defendant was employed by NBCU. Indeed, in the original Complaint, plaintiff described MSNBC as defendant's employer. *See* Compl. ¶¶ 1, 21, 23. By July 2, 2018, the day after the last subject post, plaintiff's counsel had communicated with in-house NBCU counsel concerning defendant's apology posts and the removal of social media regarding the issue. *See* emails between G. Taylor Wilson and David Sternlicht dated 7/2/2018, Dkt. 158-2. Plaintiff's counsel, therefore, knew from the outset that NBCU was directly involved in formulating Reid's apology posts. In fact, plaintiff acknowledges that NBCU "ha[s] been involved in the matters being litigated since July 2018." Mot. to Amend at 12. In addition, plaintiff could have made further allegations upon information and belief, as she continues to do in the proposed second amended complaint. *See, e.g.*, [Proposed] Second Amended Complaint ("Prop. Sec. Am. Compl.") ¶¶ 54, 64-65, 83, 110, 112, Dkt. 156-1. Rule 11 provides that a pleading may contain "factual contentions" that do not yet but "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Thus, the requirements of Rule 11 did not prevent plaintiff's counsel from adding claims against NBCU at the outset of the case. "[A]fter all, naming a defendant in a complaint is the beginning, not the end, of the litigation

process." *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11-CV-726, 2012 WL 2458060, at *8 (E.D.N.Y. June 27, 2012), *aff'd*, 2012 WL 3306612 (E.D.N.Y. Aug. 13, 2012). Thus, the Court views plaintiff's failure to name NBCU as a defendant at the commencement of the action as a strategic decision.

Indeed, holding an employer liable under a *respondeat superior* theory for defamation by an employee "is not a novel legal theory." *Callahan*, 602 F. Supp. 3d at 414 (denying motion to amend to add county as a defendant for battery claim under theory of *respondeat superior*); *see Macineirghe v. Cnty. of Suffolk*, No. 13-CV-1512, 2015 WL 4459456, at *17-*19 (E.D.N.Y. July 21, 2015) (denying motion for summary judgment on defamation claim regarding statements made by employee). From the outset of the case, plaintiff already had a good faith basis to allege that Reid acted within the scope of her employment and that the subject posts were made in furtherance of her employer's interests. For example, many of the allegations contained in the proposed Second Amended Complaint could have been included in the original Complaint: "The defamations of plaintiff by Reid alleged herein occurred while Reid was engaged in the performance of her assigned duties, or which were reasonably necessary or incidental to her employment . . . . NBC Universal and MSNBC have positioned the presentations, publications and content of MSNBC as 'anti-Trump' in the expectation and belief that such positioning would advance the popularity of its presentations, publications and content with an audience to the left of the American political spectrum, to the material financial benefit of NBC Universal and MSNBC . . . . The employment and performances of Reid in her telecasts and social media posts have been promoted by [NBCU] to advance the positioning strategy chosen for MSNBC and the collective financial interests of [NBCU] and their shareholder[s]." Prop. Sec. Am. Compl. ¶¶ 8, 17-18, Dkt. 156-1. Thus, plaintiff's theory of *respondeat superior* liability against NBCU is

largely based on facts that plaintiff knew before commencing this action, not on facts developed during discovery.

In addition, the alleged facts plaintiff now relies on as "dispositive" of her proposed claims against NBCU simply do not support plaintiff's theories of liability.    First, Reid's employment agreement provides only that NBCU is required to indemnify Reid for conduct taken under NBCU's "direction, supervision and control and done in the course of [her] duties to [the] Company" or with NBCU's authorization.    *See* Mot. to Amend at 7 & n.2; Employment Agreement, Dkt. 156-14 at ECF p. 3.[4]    The issue critical to imposing liability against NBCU is whether the subject social media posts were made at NBCU's direction, supervision or control or within the scope of Reid's employment.    The provisions contained in Reid's employment agreement itself do not answer those questions.    Likewise, NBCU's Employee Handbook and Policies and Guidelines do not address whether NBCU actually exercised any rights to control Reid's social media accounts.    *See* Mot. to Amend at 9 n.3.

As to the attorney engagement letters, those documents do not provide that NBCU was obligated to indemnify Reid under her employment agreement or otherwise support plaintiff's proposed tort or contract claims against NBCU.    For example, NBCU's engagement letter with Reichman provides that NBCU "has asked you [Reichman] to represent Defendant Joy Reid in connection with [NBCU's] indemnification and defense of Ms. Reid . . . ."    Mot. to Amend at 7-8; *see also* Dkt. 156-15 at ECF page 1.    But, that engagement letter does not assist the factfinder in determining whether, at the moment Reid made the subject postings, she was engaged in her employer's business.    Regardless, as discussed below, the engagement letters do not provide a basis for plaintiff to assert a breach of contract claim.

---

[4] Cites to "ECF page" refer to the page number assigned by the Electronic Case Filing ("ECF") system.

To the extent that plaintiff suggests that she first learned of NBCU's involvement in Reid's July 2018 apology posts at Acio's deposition on December 16, 2021, *see* Mot. to Amend at 9 n.3, as noted above, NBCU attorneys communicated with plaintiff's counsel contemporaneously about the apology posts, *see* Dkt. 158-2.   Plaintiff further contends that Griffin's deposition testimony -- *i.e.*, that Reid demanded that NBCU provide her a defense under the indemnification provision of her employment agreement -- constitutes an admission that the claims asserted in this action relate to conduct taken in the course of Reid's employment. *See* Mot. to Amend at 6 n.1.   However, Reid disputes plaintiff's characterization of Griffin's testimony that Reid demanded that NBCU indemnify her pursuant to her employment agreement.   *See* Response in Opp. at 7.   In any event, it is undisputed that Griffin testified that he determined with NBCU's legal department that Reid's social media posts were outside the scope of NBCU's indemnity provision.   *See* Response in Opp. at 7; Reply in Support at 3, Dkt. 159.   Thus, the deposition testimonies of Acio and Griffin do not justify plaintiff's belated amendments.

The Court may also consider factors such as prejudice in determining "good cause." *Kassner*, 496 F.3d at 244.   Here, the Court can presume that defendant would be prejudiced by plaintiff's addition of new parties at this juncture, where this case has been pending since 2018. Although plaintiff represents that she will not require any additional discovery, she ignores the fact that NBCU would be entitled to conduct its own discovery.   Thus, Reid and NBCU would suffer some degree of prejudice because the filing of the second amended complaint would necessarily prolong the resolution of the case to accommodate the appearance of new defendants. *See Zsa Zsa Jewels*, 2016 WL 11713520, at *4; *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 151 (S.D.N.Y. 2003) ("If the motion were to be granted, discovery would

have to be reopened because the Amended Complaint seeks to add two additional defendants to the action and they would be entitled to additional time to conduct discovery and to prepare their defenses.").

In sum, plaintiff has failed to sustain her burden of demonstrating good cause to excuse her failure to amend or add parties within the July 30, 2021 deadline.  *See Gullo*, 540 F. App'x at 47 (denying amendment to add defendants who were identified in discovery before deadline to amend); *Callahan*, 602 F. Supp. 3d at 413; *Goldman*, 2021 WL 4755293, at *3 (denying leave to amend to add counterclaims where plaintiff "possessed all of the information she needed" to assert claim in advance of deadline); *Charles v. City of New York*, No. 11-CV-2783, 2015 WL 756886, at *2 (S.D.N.Y. Feb. 20, 2015) (denying amendment to add defendants who were identified before deadline).   Nevertheless, even if the Court found that plaintiff had demonstrated good cause to amend the pleading, plaintiff has not demonstrated that the proposed amendments are otherwise permissible under Rule 15.

**II**.    **The Proposed Claims Against NBCU Are Futile**

Pursuant to Rule 15, courts ordinarily should grant leave to amend in the absence of bad faith by the moving party, undue prejudice or futility.   *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603-04 (2d Cir. 2005); *Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000).   Leave to amend may be denied based on futility where the proposed amendment would not survive a motion to dismiss.   *See Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *In re Curaleaf Holdings, Inc. Sec. Litig.*, 519 F. Supp. 3d 99, 111 (E.D.N.Y. 2021).   Generally, on a motion to amend, the court accepts the factual allegations in the proposed amended complaint as true, and does not consider any evidence except that which is included in or incorporated by reference in the amended complaint.   *See Nettis v. Levitt*, 241

F.3d 186, 194 n.4 (2d Cir. 2001) ("Determinations of futility are made under the same standards that govern Rule 12(b)(6) motions to dismiss."), *overruled on other grounds, Slayton v. Am. Exp. Co.*, 460 F.3d 215 (2d Cir. 2006); *Seemann v. Coastal Env't. Grp., Inc.*, 219 F. Supp. 3d 362, 367 (E.D.N.Y. 2016).

A.    **"Second Claim (Vicarious Liability in Tort Against [NBCU])"**

In her proposed Second Claim, plaintiff alleges that NBCU is liable for Reid's defamatory conduct under the doctrine of *respondeat superior*, s*ee* Prop. Sec. Am. Compl. ¶ 108, which makes an employer "vicariously liable for torts committed by an employee acting within the scope of the employment," *Judith M.*, 93 N.Y.2d at 933.   Defendant argues that plaintiff's proposed defamation claim against NBCU under a theory of *respondeat superior* is barred by the applicable statute of limitations.   *See* Response in Opp. at 9-13.

Plaintiff alleges that Reid committed the intentional tort of defamation in posting the subject material about plaintiff on her social media accounts.   *See* Prop. Sec. Am. Compl. ¶ 108 ("NBC Universal and MSNBC exercised supervision, direction and control over Reid as their employee both generally and specifically with respect to the defamations against plaintiff alleged herein."), ¶ 113 ("the legal responsibility of NBC Universal and MSNBC for Reid's defamations under the doctrine of *respondeat superior*"); Mot. to Amend at 2-3, 5, 9.   "It is well-settled in New York that a plaintiff cannot save an untimely defamation claim by fashioning the claim under some other rubric, thereby to avail himself of a longer limitations period."   *McKenzie v. Dow Jones & Co., Inc.*, 355 F. App'x 533, 535 (2d Cir. 2009).   Accordingly, any claim based on Reid's defamatory conduct is barred by the one-year statute of limitations governing intentional torts, pursuant to C.P.L.R. § 215[3].   *See id.;* N.Y. C.P.L.R. § 215 ("The following actions shall be commenced within one year . . . an action . . . [for] libel [or] slander . . . .").   Claims subject

14

to the one-year statute of limitations include any claim for defamation brought against her

employer under a theory of *respondeat superior*.    *See Doe v. NYSARC Tr. Serv., Inc.*, No. 20-

CV-801, 2020 WL 5757478, at *6 (N.D.N.Y. Sept. 28, 2020) ("as plaintiff's state law tort claims

must be dismissed as time-barred, it necessarily follows that any cause of action against [the

employers] based on the theory of *respondeat* superior and premised upon the alleged [state law

torts] must also be dismissed as time-barred"), *report and recommendation adopted*, 2020 WL

7040982 (N.D.N.Y. Dec. 1, 2020); *Potter v. Zucker Hillside Hosp.*, 110 N.Y.S.3d 142, 144 (2d

Dep't 2019) (affirming dismissal of intentional tort against employer under a theory of

*respondeat superior* as barred by one-year statute of limitations); *McCarthy v. Mario Enters.,

Inc.*, 81 N.Y.S.3d 262, 263 (3d Dep't 2018) (any claim that employer "was responsible for

[defendant-employee's intentional] actions under a theory of respondent superior was barred by

the one-year statute of limitations").    Thus, plaintiff had until June 29 and July 1, 2019 to bring

her proposed claim against NBCU, one year following each alleged actionable social media post.

Accordingly, plaintiff's proposed defamation claim against NBCU is futile as time barred.[5]

    Plaintiff seeks to avoid the obvious statute of limitations bar by arguing that a three-year

limitations period applies to her proposed claim pursuant to C.P.L.R. § 214(5).    *See* Mot. to

Amend at 14 ("a different limitations period applies to the employer").    According to plaintiff,

---

[5] Plaintiff has not argued that her proposed amendment relates back to the date of her original
pleading, nor could she.    Indeed, under Rule 15(c)(1)(C), an amended complaint adding new
parties relates back only if plaintiff sued the wrong party due to "a mistake concerning the proper
party's identity."    Fed. R. Civ. P. 15(c)(1)(C).    Here, in contrast, "[t]he plaintiff has sued the
right defendant, and simply neglected to sue another defendant who might also be liable."    *In re
Vitamin C Antitrust Litig.*, 995 F. Supp. 2d 125, 129 (E.D.N.Y. 2014) (distinguishing "wrong
party" cases from "additional party" cases).    In such circumstances, Rule 15 does not allow
relation back.    *See Cornwell v. Robinson*, 23 F.3d 694, 705 (2d Cir. 1994) (finding Rule
15(c)(1)(C) inapplicable to proposed amendment seeking to add defendants where plaintiff knew
about additional defendants within statute of limitations period and failed to name them).    The
result would be the same under New York's relation back doctrine.    *See Doe v. New York*, 97 F.
Supp. 3d 5, 20 (E.D.N.Y. 2015).

"[t]he liability of the employer is customarily predicated under common law *respondeat superior* on a theory of negligence in its hiring, supervision and control of its employee." *Id.*

First, even if a three-year limitations period applied here, plaintiff's proposed claims would still be time barred. Under section 214(5), the statute of limitations would have run by June 29 and July 1, 2021 (three years from the alleged actionable social media posts), several months before plaintiff filed her original motion to amend on December 28, 2021 (Dkt. 121).

Second, plaintiff is incorrect that the three-year limitations period applies to plaintiff's proposed tort claim. Plaintiff is correct insofar as a claim that NBCU negligently hired, supervised and retained Reid would be subject to a three-year limitations period. S*ee McCarthy*, 81 N.Y.S.3d at 264. However, plaintiff has not proposed such a claim.

"In determining which limitations period is applicable to a given cause of action, the court must look to the substance of the allegations rather than to the characterization of those allegations by the parties." *See Potter*, 110 N.Y.S.3d at 144 (quoting *Dray v. Staten Is. Univ. Hosp.*, 75 N.Y.S.3d 59 (2d Dep't 2019)). Here, the Proposed Second Amended Complaint clearly asserts a derivative claim against NBCU under a *respondeat superior* theory. *See* Prop. Sec. Am. Compl. at p. 22 ("Second Claim (Vicarious liability in tort against NBC Universal and MSNBC)"); *id.* ¶ 113 (citing evidence that purportedly "establish[es] the legal responsibility of NBC Universal and MSNBC for Reid's defamations under the doctrine of *respondeat superior* . . . ."). Despite plaintiff's attempts to conflate the two causes of action, claims for negligent hiring and supervision are distinct from claims under the doctrine of *respondeat superior*. *See Quiroz v. Zottola*, 948 N.Y.S.2d 87, 89 (2d Dep't 2012) ("where an employee is acting within the scope of his or her employment, the employer is liable for the employee's negligence under a theory of *respondeat superior* and no claim may proceed against the employer for negligent hiring,

16

retention, supervision or training"); *see also Ben v. U.S.*, 160 F. Supp. 3d 460, 476 (N.D.N.Y. 2016) (quoting *Williams v. Boulevard Lines, Inc.*, No. 10-CV-2924, 2013 WL 1180389, at *13, n. 10 (S.D.N.Y. Mar. 12, 2013)) ("[w]here the acts of 'employees' are concerned, an employer can be held vicariously liable under principles of *respondeat superior* for acts committed within the scope of the employee's employment, or may be held directly liable for 'negligent hiring, retention, or supervision' for acts committed outside that scope.").

Indeed, the factual allegations contained in the proposed "Second Claim" are inconsistent with a claim for negligent hiring, supervision and retention, which requires a plaintiff to show that the individual defendant was *not* acting within the scope of her employment. *See, e.g.*, *Rich v. Fox News Network, LLC*, 939 F.3d 112, 129-30 (2d Cir. 2019); *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 361 (S.D.N.Y. 2021); *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 521-22 (S.D.N.Y. 2015) (collecting cases). Here, plaintiff alleges that Reid *was* acting within the scope of her employment. *See, e.g.,* Prop. Sec. Am. Compl. ¶ 108 ("Reid's conduct was within the scope of her employment . . . ."). Accordingly, the three-year statute of limitations does not apply to the tort claim proposed by plaintiff.

**B.    "Third Claim (Liability of [NBCU] under Express Contractual Warranties)"**

Plaintiff further seeks to avoid the statute of limitations bar by arguing that her proposed claims against NBCU are not limited to a tort theory, but also sound "in contract, to which a 6-year statute of limitations applies under [C.P.L.R.] § 213(2)." Mot. to Amend at 14. Apparently, plaintiff refers to her proposed "Third Claim" for "Liability of NBC Universal and MSNBC under express contractual warranties." Prop. Sec. Am. Compl. at p. 25. However, plaintiff has not proposed a viable breach of contract claim.

To state a claim for breach of contract under New York law, plaintiff must show:   (1) the formation of a contract between the parties; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages.   *See Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015); *BASF Corp. v. Prime Auto Collision Inc.*, No. 20-CV-4797, 2022 WL 704127, at *5 (E.D.N.Y. Mar. 9, 2022).   Plaintiff is not a party to Reid's employment agreement nor any express indemnification agreement.   In fact, it is undisputed that there is no contractual relationship between plaintiff and NBCU.   Rather, plaintiff argues that she is a third-party beneficiary under the indemnification provision contained in Reid's employment agreement, as well as an oral express indemnification that is memorialized in the engagement agreement between NBCU and Reichman.   *See* Reply in Support at 8, Dkt. 159.

"A party asserting rights as a third-party beneficiary must establish '(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [her] benefit and (3) that the benefit to [her] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [her] if the benefit is lost.'"   *State of Cal. Pub. Empls. Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434-35 (2000) (quoting *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 336 (1983)). It is well settled that a third party does not have standing to bring a breach of contract claim under an indemnity contract.   *See Broadhurst ex rel. Broadhurst v. Cnty. of Rockland*, No. 07-CV-9511, 2011 WL 5142760, at *6 (S.D.N.Y. Oct. 31, 2011) (section 1983 plaintiff lacked standing to claim indemnity from County for conduct of defendant officer); *Madeira v. Affordable Hous. Found., Inc.*, 521 F. Supp. 2d 319, 320 (S.D.N.Y. 2007) (holding that injured construction worker lacked standing to enforce indemnity agreement between owner of construction site and general contractor), *aff'd in part and vacated in part on other grounds*, 323

F. App'x 89 (2d Cir. 2009); *Kan v. Port Auth. of N.Y. & N.J.*, No. 99-CV-10235, 2000 WL 1745051, at *3 (S.D.N.Y. Nov. 28, 2000) (indemnity agreement does not make indemnitor directly liable to injured plaintiff, who was not party to the agreement).

Here, there is no basis for the court to conclude that the indemnification provisions in Reid's employment agreement and the engagement letters were for plaintiff's benefit. On the contrary, the indemnifications are clearly intended to benefit Reid, not plaintiff. *See, e.g.*, Dkt. 156-14 at ECF pp. 1, 3 ("Company shall defend, indemnify and hold harmless [Reid] . . . ."). Regardless of whether Reid is entitled to contractual indemnification from NBCU, plaintiff lacks standing to bring a claim for breach of contract against NBCU. *See Broadhurst*, 2011 WL 5142760, at *6; *Madeira*, 521 F. Supp. 2d at 320; *see also Egan Real Est. v. McGraw*, 339 N.Y.S.2d 870, 877 (4th Dep't 1973) (rejecting plaintiff's argument that indemnitor is liable to it because of an indemnity clause under which indemnitor agreed to hold indemnitee harmless against the type of claim brought by plaintiff; "no such cause of action exists in law"). Thus, allowing plaintiff's proposed Third Claim would be futile.

### C.    Equitable Tolling

In yet another attempt to avoid the consequences of the statute of limitations on plaintiff's proposed claims against NBCU, plaintiff argues that defendant should be estopped from asserting a statute of limitations defense. *See* Prop. Sec. Am. Compl. ¶¶ 116-17; Mot. to Amend at 15. According to plaintiff, NBCU (1) "improperly object[ed] to legitimate discovery demands by plaintiff that would have disclosed defendants' contractual right of direction, supervision and control over Reid's social media accounts"; (2) "conceal[ed]" that it was "the real part[y] in interest by virtue of express indemnifications"; (3) "conceal[ed]" that it had "assumed the duty of defending Reid pursuant to an express indemnity"; and (4) "falsely"

"maintain[ed]" that it "had nothing whatsoever to do with defendant's social media accounts of how they were used."   Mot. to Amend at 15; *see* Prop. Sec. Am. Compl. ¶¶ 113-17.

"Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances."   *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996).   The doctrine of equitable tolling is applied "only in rare and exceptional circumstances, where . . . extraordinary circumstances prevented a party from timely performing a required act."   *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (internal quotations omitted); *see Rene v. Jablonski*, No. 08-CV-3968, 2009 WL 2524865, at *6 (E.D.N.Y. 2009) (statute of limitations deadlines may "be equitably tolled in 'rare and exceptional circumstance[s],' in which a party is 'prevented in some extraordinary way from exercising [her] rights'") (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) and *Johnson*, 86 F.3d at 12).   The doctrine of equitable estoppel may preclude a defendant from asserting the statute of limitations as a defense "in cases where the plaintiff knew of the existence of [her] cause of action but the defendant's conduct caused [the plaintiff] to delay in bringing [her] lawsuit."   *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 50 (2d Cir. 1985).   "To invoke equitable estoppel, a plaintiff must show that:   (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to [her] detriment."   *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995) (citing *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 59 (1984)).   Equitable estoppel may be justified even in the absence of fraud or an intent to deceive so long as the defendants' misrepresentations or misconduct misled the plaintiff.   *See Bild v. Konig,* No. 09-CV-5576, 2012 WL 13109964, at *7 (E.D.N.Y. Dec. 20, 2012).

As discussed above, plaintiff already possessed sufficient information from the outset of the case to name NBCU as a defendant. Further, NBCU did not engage in any conduct that prevented plaintiff from adding NBCU as a defendant before the applicable deadline expired. For example, plaintiff has not supported her conclusory claim that NBCU "improperly object[ed] to legitimate discovery demands." *See* Mot. to Amend at 15. A non-party's opposition to discovery requests is not inherently improper.

In addition, plaintiff has not shown that the NBCU defendants "conceal[ed]" from plaintiff that they "were the real parties in interest by virtue of express indemnifications" and "had in fact assumed the duty of defending Reid pursuant to an express indemnity." *Id.* Indeed, NBCU's indemnification of Reid, as discussed above, does not give rise to a breach of contract claim for which plaintiff has standing. Moreover, plaintiff has not shown that any indemnity is legally required or was triggered by the provisions contained in Reid's employment agreement.

Plaintiff further contends that NBCU misrepresented that it had "nothing to do with Reid's social media accounts." Prop. Sec. Am. Compl. ¶ 115. However, plaintiff has not shown that NBCU concealed any direction or control it had over defendant's social media accounts. Further, plaintiff has not demonstrated that NBCU actually exercised any direction, control or supervision over the subject posts.

In sum, plaintiff has not demonstrated any fraudulent or deceptive conduct sufficient to warrant applying the doctrine of equitable estoppel. *See Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 447 (S.D.N.Y. 2014) (finding allegations failed to specify context and timing of misrepresentations), *aff'd*, 579 F. App'x 7 (2d Cir. 2014); *Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (2006) (affirming dismissal of complaints alleging clerical sexual abuse where "[p]laintiffs were

. . . aware that the priests were employees of the dioceses and could have brought actions against the dioceses").

D.    **"Fourth Claim (Declaratory Judgment)"**

Finally, plaintiff's proposed "Fourth Claim" for "Declaratory Judgment" is also futile. In that claim, plaintiff alleges that if the court finds premature plaintiff's proposed claims against NBCU for indemnification because there has not yet been any judgment entered against Reid, that the court enter a declaration that NBCU will be liable for any judgment against Reid.    *See* Prop. Sec. Am. Compl. ¶ 130; Mot. to Amend at 3; Reply in Support at 10-11.    Plaintiff's claim is misplaced.    Reid has not argued that plaintiff must file her claims against NBCU in another action or that plaintiff's claims based on contractual indemnities are premature.    *See* Response in Opp. at 18.    As discussed above, plaintiff does not have any viable underlying claims against NBCU that could give rise to such a declaratory judgment.    Therefore, this Court recommends denying leave to amend to add the Fourth Claim.

III.    **Plaintiff Has Failed to Show Good Cause to Add New Allegations Unrelated to the Proposed Claims Against NBCU**

In addition to the proposed claims against NBCU, plaintiff's proposed Second Amended Complaint contains new allegations concerning her claims against Reid.    *See, e.g.*, Prop. Sec. Am. Compl. ¶¶ 2, 4, 9-10, 16, 34-35, 37-44, 51-52, 67-69, 71-74, 91.    Plaintiff explains that these allegations "spell out the sequence of events by which defendant Joy Reid's social media posts became a substantial factor in the defamation of plaintiff, and articulates California law applicable to torts having so-called concurrent causes," in response to arguments raised by defendant.    *See* Mot. to Amend at 3-4; *see also id.* at 16-17.    These proposed amendments were not included in plaintiff's original motion to amend (Dkt. 121) and were raised for the first time in plaintiff's December 14, 2022 motion (Dkt. 156).

Plaintiff has failed entirely to address good cause to add these new allegations.    Indeed, many of the allegations, as Reid points out, are about the plaintiff, or are derived from publicly-available information, indicating that plaintiff was aware, or should have been aware, of them from the outset of the case.    *See* Prop. Sec. Am. Compl. ¶¶ 2, 4, 9-10, 16, 34, 38-44, 67-69. That plaintiff may now be motivated to add these facts, does not mean that she just learned of these facts.    *See Point 4 Data*, 2012 WL 2458060, at *7.    Since it is plaintiff's burden to demonstrate good cause, and because she has failed to establish good cause, the Court recommends denying her request.    *See* J*urez v. C. Yetev Lev D'Satmar Meat, Inc.*, No. 21-CV-2633, 2022 WL 17245486, at *4 (E.D.N.Y. Nov. 21, 2022) (denying leave to add claim for unpaid wages where plaintiffs failed to address good cause for that claim in any of their briefs; "the Court has no basis to infer that Plaintiffs were diligent in pursuing this claim prior to the expiration of Rule 16 deadline"); *Bryan v. Commack Union Free Sch. Dist.*, No. 18-CV-7249, 2021 WL 633751, at *7 (E.D.N.Y. Feb. 18, 2021) (in the absence of a showing of diligence, denying amendment to "amplify Plaintiff's existing allegations" and "elaborate and develop allegations contained in the original Complaint"); *Perfect Pearl*, 889 F. Supp. 2d at 458-59 (denying leave to amend to add factual allegations that derive from publicly available website and discovery that was produced before deadline to amend).

Moreover, in her reply brief, Dkt. 159, plaintiff entirely failed to address these amendments or Reid's arguments in opposition.    For this additional reason, plaintiff's request is denied as abandoned.    *See M&A Metals, Inc. v. Fina*, No. 21-CV-5570, 2023 WL 2734794, at *4 (E.D.N.Y. Mar. 31, 2023); *Doe v. Indyke*, 465 F. Supp. 3d 452, 466-67 (S.D.N.Y. 2020).

**Conclusion**

For the reasons stated above, this Court respectfully recommends denying plaintiff's belated motion to amend her complaint to add new parties.   A copy of this Report and Recommendation is being electronically served on counsel.

Any objections to the recommendations made in this Report must be filed with the Honorable Dora L. Irizarry within 14 days after the filing of this Report and Recommendation and, in any event, on or before **September 1, 2023**.   *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).   Failure to file timely objections may waive the right to appeal the District Court's order.   *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

   **SO ORDERED.**

Dated:    Brooklyn, New York
          August 18, 2023

                              s/ James R. Cho_____
                              James R. Cho
                              United States Magistrate Judge