UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
ROSLYN LA LIBERTE,                                                 :
                                                                   :
                              Plaintiff,                           :
                                                                   :      MEMORANDUM &
       -against-                                                   :      ORDER
                                                                   :
JOY REID,                                                          :      No. 18-CV-5398-DLI-JRC
                                                                   :
                              Defendant.                           :
                                                                   :
------------------------------------------------------------------ x

JAMES R. CHO, United States Magistrate Judge:

On September 25, 2018, plaintiff Roslyn La Liberte ("plaintiff" or "La Liberte") commenced this defamation action against defendant Joy Reid ("defendant" or "Reid"), a cable television personality. *See generally* Compl., Dkt. 1. Currently before the Court is plaintiff's motion to compel the production of documents withheld by non-parties NBCUniversal Media, LLC and MSNBC Cable, LLC (collectively, "NBCU") under claims of attorney-client privilege and/or the attorney work product doctrine. *See* Letter Motion to Compel, Dkt. 153; Motion to Compel ("Mot. to Compel"), Dkt. 119. For the reasons discussed below, plaintiff's motion to compel is granted in part and denied in part.

**Background**

As pertinent to the instant motion, plaintiff brings this defamation suit in connection with social media posts which defendant, a reporter and political commentator employed by NBCU, made about plaintiff, on June 29, 2018 and July 1, 2018, respectively. *See* Am. Compl. ¶¶ 1, 42, 48, 56, Dkt. 16. On July 2, 2018, the day after the last subject post, defendant and NBCU received a letter via email from plaintiff's prior counsel, Lin Wood, demanding that defendant "immediately . . . take down all publicly available copies of the social media posts identified" in

the letter.  *See id.* ¶ 57; *id.*, Exhibit 7, Dkt. 16-7 at ECF p. 4.[1]  In response to Mr. Wood's letter, defendant "took down the posts and issued a retraction and apology."  Def. Opp. at 7, Dkt. 129. The documents withheld by NBCU as privileged "encompass communications and other documents sent between attorneys strategizing over how to respond to Plaintiff's litigation threat in her July 2, 2018 letter." *Id.* at 3.

Initially, plaintiff argues that the communications at issue are not protected by any privilege because of the involvement of non-lawyers in the communications.  *See* Mot. to Compel at 7-8, Dkt. 119; Pl. Reply at 7-9, Dkt. 132.  Second, plaintiff argues that even if the documents are entitled to protection under the attorney-client or attorney work product doctrine, the crime-fraud exception applies here.  *See* Pl. Reply at 11-19, Dkt. 132; Mot. to Compel at 4-6, Dkt. 119.  According to plaintiff, when defendant deleted the subject social media posts, she "destroyed critical evidence in this case" -- "the thousands of comments and other engagements by her followers and readers relating to this retweet and these posts, as well as their 'analytics.'" *See* Mot. to Compel at 2, Dkt. 119.  Plaintiff contends that any communications between counsel, NBCU and defendant, in furtherance of a scheme to conceal or destroy evidence, constitutes an exception to the privilege and such communications must be produced.  *See* Mot. to Compel at 8-9, Dkt. 119.

On May 20, 2022, without making a determination that plaintiff had made the requisite threshold showing, and without objection by defendant, this Court granted plaintiff's request that the Court review *in camera* 53 documents withheld by NBCU.  *See* Order dated May 20, 2022; Letter in Response to Pl.'s Letter Seeking *In Camera* Review, Dkt. 155.  On May 25, 2022, NBCU submitted the subject documents to this Court for *in camera* inspection.  *See* Letter

---

[1] Citations to "ECF" refer to the pagination generated by the Court's ECF docketing system.

Submitting Documents for *In Camera* Review, Dkt. 144; Documents Resubmitted on November 29, 2023, Dkt. 171.

## Discussion

**I.      Legal Standard**

      **A.      Attorney-Client Privilege**

In cases brought pursuant to this Court's diversity jurisdiction, the Court looks to state privilege law. *See Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, No. 18-CV-4921, 2021 WL 1930294, at *2 (S.D.N.Y. May 13, 2021); *see also* Fed. R. Evid. 501 ("in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"). Since the parties did not raise the choice of law issue, and there is no meaningful conflict in the laws, the Court applies New York privilege law.[2]

"The elements of the attorney-client privilege under New York law are the existence of an attorney-client relationship, a communication made within the context of that relationship for the purpose of obtaining legal advice, and the intended and actual confidentiality of that communication." *Sparrow Fund Mgmt.*, 2021 WL 1930294, at *3 (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 264 (S.D.N.Y. 1995)); *see* N.Y. C.P.L.R. § 4503(a)(1) (the attorney-client privilege protects "evidence of a confidential communication made between the attorney or his or her employee and the client in the course of professional employment"). To merit protection, the communication itself must be "primarily or predominantly of a legal character." *Spectrum Sys. Int'l Corp. v. Chemical Bank*, 78 N.Y.2d

---

[2] "[T]he New York law of attorney-client privilege is, with certain exceptions, substantially similar to the federal doctrine." *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 70 n.6 (S.D.N.Y. 2009). In addition, the same legal standards apply under the New York and federal crime-fraud doctrines. *See Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 425 (S.D.N.Y. 2013).

371, 378 (1991). This distinction may raise issues in the context of in-house counsel, who often serve dual roles as legal advisors and business consultants. *See In re County of Erie*, 473 F.3d 413, 421 (2d Cir. 2007). The party asserting the privilege bears the burden of establishing its entitlement to protection. *See Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, No. 18-CV-4437, 2020 WL 757840, at *3 (S.D.N.Y. Feb. 14, 2020); *see also Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 27 N.Y.3d 616, 624 (2016) ("The party asserting the privilege bears the burden of establishing its entitlement to protection by showing that the communication at issue was between an attorney and a client for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship, that the communication is predominantly of a legal character, that the communication was confidential and that the privilege was not waived.") (internal citations omitted).

  **B.**  **Work Product Protection**

"Unlike the attorney-client privilege, the work product protection in diversity cases is governed by federal law." *Bowne of New York City*, 161 F.R.D. at 264. The work product doctrine protects documents and tangible things prepared by a party or their attorney in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3). Whether the work product doctrine applies to particular documents or materials turns on "whether [they] were prepared 'with an eye toward' or 'in anticipation of' or 'because of the prospect of litigation.'" *Pearlstein v. Blackberry Ltd.*, No. 13-CV-7060, 2019 WL 1259382, at *5 (S.D.N.Y. Mar. 19, 2019).

  **C.**  **Crime-Fraud Exception**

In New York, the party seeking privileged communications pursuant to the crime-fraud exception must demonstrate "a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance

4

of the fraud or crime." *In re New York City Asbestos Litig.*, 966 N.Y.S.2d 420, 422 (1st Dep't 2013); *see United States v. Jacobs*, 117 F.3d 82, 88 (2d Cir. 1997) (the disputed communications "were intended in some way to facilitate or to conceal the [fraudulent] activity"). "Courts examining documents *in camera* have the discretion to determine whether the crime-fraud exception applies." *Sparrow Fund Mgmt.*, 2021 WL 1930294, at *3; *see Pearlstein*, 2019 WL 1259382, at *9 (crime-fraud privilege did not apply where the documents submitted *in camera* failed to demonstrate a "substantial possibility that a fraud was committed or that Defendants used the communications with counsel to commit a crime or fraud").

## II.  *In Camera* Review

Having reviewed the documents at issue *in camera*, the Court finds that, with a few exceptions discussed below, the documents were properly withheld under a claim of attorney-client privilege or as protected attorney work product.  In addition, the Court finds that there is no reasonable basis for application of the crime-fraud exception.

As an initial matter, the communications at issue were sent between NBCU in-house lawyers and NBCU employees, including Lorie Acio, an employee of NBCU's Media Relations and Strategy Department, for the purpose of giving legal advice regarding the social media posts giving rise to this litigation, including a response to plaintiff's threat of litigation as articulated in Mr. Wood's July 2, 2018 letter.  *See* Transcript of deposition of Lorie Acio at 12-14, 17-18, Dkt. 118-3 (describing emails and phone calls with in-house counsel Susan Weiner or David Sternlicht on July 2, 2018).  The vast majority of the communications at issue are undoubtedly privileged or protected work product, as they constitute confidential communications between attorney and client for the purpose of rendering legal advice and because of potential litigation. *See In re Grand Jury Subpoenas dated March 24, 2003*, 265 F. Supp. 2d 321, 331-32 (S.D.N.Y.

5

2003) (sustaining attorney-client privilege objections to questions seeking the content of oral communications among public relations firm, client and her lawyers, or any combination thereof). The involved attorneys were clearly acting in their roles as in-house counsel and providing advice to their clients on a legal issue. Indeed, the relevant emails at issue were created on July 2, 2018 -- the same day that plaintiff's counsel sent a letter to defendant and NBCU threatening litigation.[3]

Notwithstanding the above, several of the emails are merely transmittal emails that enclose or attach other documents, without further substantive comment. Such "'cover communications neither furnish nor request legal advice and do not reveal any privileged communications." *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 319 F.R.D. 100, 104-05 (S.D.N.Y. 2017); *see Shih v. Petal Card, Inc.*, 565 F. Supp. 3d 557, 568 n.4 (S.D.N.Y. 2021) ("The transmittal email does not contain any confidential information or legal advice and hence is not itself privileged."). Accordingly, in the context of this case, the Court finds that these documents should not be withheld from discovery merely because they were sent to or from an attorney. Therefore, NBCU shall produce Privilege Log Entry Numbers 93, 100, 212, 221, as well as the email sent on "7/2/2018 at 5:07:42 PM" contained in Privilege Log Entry Numbers 99 and 219.[4]

In addition, certain documents that were withheld as attachments to privileged emails appear to have been otherwise produced by NBCU. For example, the July 2, 2018 Lin Wood

---

[3] Privilege Log Entry Number 44 dated July 9, 2018 attaches a purported tweet dated June 29, 2018 (Privilege Log Entry Number 45). Given the nature of the communications, the Court finds that defendant properly withheld these documents on privilege grounds. All other documents in the privilege log are dated July 2, 2018.

[4] In Document Numbers 99 and 219, the redactions to the July 2, 2018 email sent at 4:22 p.m. may remain in place.

letter and attachments were withheld as Privilege Log Entry Numbers 97, 220, 222, 224 and 227 because they were transmitted to or from an attorney, but NBCU produced the same letter and attachments to plaintiff on May 25, 2022 as Privilege Log Entry Number 225. The letter and attachments do not themselves reveal the content of any privileged discussions. Therefore, defendant shall produce Privilege Log Entry Numbers 97, 220, 222, 224 and 227.

Regarding the applicability of the crime-fraud exception, this Court finds that there is no factual support for the allegation that NBCU lawyers engaged in a scheme to delete and destroy social media analytics associated with the subject posts. Prior to reviewing the emails at issue, the Court could not determine whether plaintiff had a credible basis for arguing that the crime-fraud exception applies to some or all of the documents. While the Court did not make a threshold finding that *in camera* review was warranted, the determination whether privilege has been correctly asserted has now been made through *in camera* review.

Based on this Court's review of the emails at issue, there is no cause, let alone probable cause, to believe that a particular communication or work product was intended to facilitate or conceal a scheme to spoliate evidence. Indeed, the documents the Court has reviewed *in camera* do not support plaintiff's speculative application of the crime-fraud exception. *See Robinson v. De Niro*, No. 19-CV-9156, 2022 WL 704922, at *7 (S.D.N.Y. Mar. 9, 2022) (after *in camera* review, finding "nothing in [documents] persuades this Court that there is a substantial possibility that a fraud was committed or that Defendants used the communications with counsel to commit a crime or fraud"); *Sparrow Fund Mgmt.*, 2021 WL 1930294, at *3 (noting that the "major flaw in Sparrow's argument [that the crime-fraud exception applied] is that it has no factual support for the contention that the privileged communications at issue furthered a crime,

fraud, or intentional tort that undermines the adversarial system").[5]

In the event the Court ordered production of previously-withheld documents, plaintiff also sought leave to re-depose certain witnesses, including Ms. Acio. *See* Mot. to Compel at 11-12, Dkt. 119; Pl. Reply at 22-24, Dkt. 132. Based on the extremely limited production of previously-designated privileged documents ordered by the Court herein and the inapplicability of the crime-fraud exception as it relates to the privileged documents, the Court does not find plaintiff's request to re-depose Ms. Acio warranted and denies the request.

## Conclusion

For the reasons set forth above, plaintiff's motion to compel is granted in part and denied in part. By **January 5, 2024**, non-party NBCU shall produce the documents as described above.

**SO ORDERED**

Dated: Brooklyn, New York
       January 2, 2024

s/ James R. Cho
JAMES R. CHO
United States Magistrate Judge

---

[5] Plaintiff has withdrawn her request for social media analytics from the period June 1, 2018-July 30, 2018. *See* Letter Motion to Compel, Dkt. 153 at ECF p. 3.